# EXHIBIT 1

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

EGO EXPRESS, INC.; SUPER EGO HOLDING, LLC,

        Plaintiff,

v.

TRISURA SPECIALTY INSURANCE COMPANY; WILSON INSURANCE AND INVESTMENT GROUP; THE LITTLETON GROUP, A DAVIES COMPANY; TRANSLIDE LLC D/B/A TRANSLIDE FREIGHT; HERODE FLEURANT,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**2023MR000744**

Case No.

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 25719002
2023MR000744
FILEDATE: 12/22/2023 3:34 PM
Date Submitted: 12/22/2023 3:34 PM
Date Accepted: 12/22/2023 4:18 PM
LG

### COMPLAINT AT LAW

NOW COMES the Plaintiffs, EGO EXPRESS, INC.; and SUPER EGO HOLDING, LLC, by and through its attorney, LUKA MADZARAC, and for its complaint against the Defendants, TRISURA SPECIALTY INSURANCE COMPANY; WILSON INSURANCE AND INVESTMENT GROUP; THE LITTLETON GROUP, A DAVIES COMPANY; TRANSLIDE LLC D/B/A TRANSLIDE FREIGHT; and HERODE FLEURANT states as follows:

### Parties, Jurisdiction and Venue

1.    EGO EXPRESS, INC. ("EGO EXPRESS") is an Illinois corporation with its principal place of business at 1517 N. Dee Rd., Park Ridge, Illinois 60068.

2.    SUPER EGO HOLDING, LLC ("SUPER EGO") is an Illinois corporation with its principal place of business at 677 N. Larch Ave., Elmhurst, IL 60126.

3.    TRISURA SPECIALTY INSURANCE COMPANY ("TRISURA") is a licensed and registered insurance company which does business in the State of Illinois.

1

4.     WILSON INSURANCE AND INVESTMENT GROUP ("WILSON") is a licensed and registered insurance company which does business in the State of Illinois.

5.     THE LITTLETON GROUP, A DAVIES COMPANY ("LITTLETON GROUP") is a comprehensive claims handling company which does business in the State of Illinois.

6.     TRANSLIDE LLC D/B/A TRANSLIDE FREIGHT ("TRANSLIDE") is or was an Indiana transportation limited liability company doing business in the State of Illinois.

7.     HERODE FLEURANT ("FLEURANT") is or was the owner and principal of TRANSLIDE, and currently resides at or near 4108 Luxemburg Cir. E., Indianapolis, IN 46228.

8.     Jurisdiction is proper pursuant to 735 ILCS 5/2-209(a)(1) as all of the parties conduct and/or conducted business in this State as well as pursuant to the Equipment Lease to Purchase Agreement Trailer Lease to Purchase Only ("Lease Agreement"). See Exhibit A, Equipment Lease to Purchase Agreement Trailer Lease to Purchase Only.

9.     Venue is proper pursuant to the Lease Agreement. See Exhibit A.

## Factual Background

10.    On or about May 22, 2023, TRANSLIDE and FLEURANT, jointly and severally, entered into the Lease Agreement with EGO EXPRESS for the lease of a 2016 Vanguard dry van trailer with a VIN of 5V8VC5327GM603938 (the "Trailer"). See Exhibit A.

11.    On or about May 22, 2023, FLEURANT with the execution of the "Statement of Personal Guarantee," agreed to personally cover any amount unpaid by TRANSLIDE under the Lease Agreement. See Exhibit A.

12.    Upon information and belief and Sometime after the execution of the Lease Agreement, TRANSLIDE and/or FLEURANT, procured a TRISURA insurance policy with a

policy number of CW3532551-00 (the "Policy") through WILSON with an effective date of August 10, 2023 through August 10, 2024. See Exhibit B, Partial Policy.

13.     Pursuant to the Certificate of Insurance provided to EGO EXPRESS and SUPER EGO, SUPER EGO was listed as the certificate holder and loss payee. See Exhibit C, Certificate of Insurance.

14.     On or about August 15, 2023, the Trailer was operated by TRANSLIDE through its independent contractor, employee, agent, and/or apparent agent, Victor Emanus ("Emanus"), on US 59 traveling northbound. See Exhibit D, Texas Peace Officer's Crash Report.

15.     On or about August 15, 2023, the Trailer was overturned by Emanus in an effort to avoid a collision with an unknown semi-tractor truck. See Exhibit D.

16.     On or about August 15, 2023, the Trailer was towed by Buentello Wrecker Service, LLC ("Buentello").

17.     For it's towing services Buentello provided an invoice to EGO EXPRESS and/or SUPER EGO totaling to $21,400.00 and an invoice for storage fees totaling to $3,955.00, as of December 6, 2023.

18.     On or about October 10, 2023, EGO EXPRESS discovered that the Trailer was located at Buentello's yard and that TRANSLIDE and/or FLEURANT had failed to pay for the invoices billed by Buentello and pick up the Trailer.

19.     Subsequently, EGO EXPRESS and/or SUPER EGO discovered that an insurance claim was opened for the damage done to the Trailer by TRANSLIDE and/or FLEURANT.

20.     Upon contacting Jana Williams, a transportation adjuster, employed by LITTLETON GROUP and/or Davies Group Ltd., EGO EXPRESS and/or SUPER EGO was informed that insurance coverage would be provided to TRANSLIDE and claimed that a title was

3

provided showing TRANSLIDE as the titled owner of the Trailer. See Exhibit E, Fraudulent Certificate of Title of a Vehicle.

21.     Upon information and belief, TRANSLIDE and/or FLEURANT doctored a copy of the title for the Trailer removing EGO EXPRESS and replacing it with TRANSLIDE, however, the address is remained the registered address for EGO EXPRESS. See Exhibit E.

22.     At no point was TRANSLIDE registered at 1517 N. Dee Rd., Park Ridge, IL 60068, nor did TRANSLIDE own the title to the Trailer.

23.     On or about October 19, 2023, EGO EXPRESS and/or SUPER EGO, provided a copy of the title showing EGO EXPRESS as the title owner with Byline Bank ISAOA ("Byline") listed as the lienholder. See Exhibit F, Certificate of Title of a Vehicle.

24.     Regardless of the fraudulent activity by TRANSLIDE and/or FLEURANT, Jana Williams, refused to provide the payment directly to SUPER EGO as the loss payee or Byline as the lienholder.

25.     Subsequently, TRISURA and/or LITTLETON GROUP, denied the claim on November 17, 2023, after initially stating that the claim would be covered and paid to TRANSLIDE and/or FLEURANT, on the purported basis that the driver, Emanus, was an undeclared driver. See Exhibit G, Denial Letter.

26.     TRISURA and/or LITTLETON GROUP, has refused to provide EGO EXPRESS and/or SUPER EGO with the full Policy in support of its denial.

27.     Since October, 2023, and in addition to the June, 2023, payment, TRANSLIDE and/or FLEURANT, has refused to make its monthly payments pursuant to the Lease Agreement.

4

## COUNT I - DECLARATORY JUDGMENT
### (Super Ego Holding, LLC v. Trisura Specialty Insurance Company)

28.     Plaintiff, SUPER EGO, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29.     An actual controversy exists which may be fully and finally determined by this Court as to the rights of each of the parties under the Policy.

30.     Pursuant to Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, this Court is vested with the power to make binding declarations of the rights and liabilities of the parties hereto under the terms and provisions of the Policy to adjudicate the final rights of all parties thereunder, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiff, SUPER EGO HOLDING, LLC respectfully requests that this Court enter a declaratory judgement in its favor declaring that the Policy covers the losses sustained by Plaintiff, SUPER EGO HOLDING, LLC, related to the total loss of the Trailer and for such other and further relief as this Court deems just and appropriate.

## COUNT II - DECLARATORY JUDGMENT
### (Super Ego Holding, LLC. v. Wilson Insurance and Investment Group)

28.     Plaintiff, SUPER EGO, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29.     An actual controversy exists which may be fully and finally determined by this Court as to the rights of each of the parties under the Policy.

30.     Pursuant to Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, this Court is vested with the power to make binding declarations of the rights and liabilities of the parties hereto under the terms and provisions of the Policy to adjudicate the final rights of

all parties thereunder, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiff, SUPER EGO HOLDING, LLC respectfully requests that this Court enter a declaratory judgement in its favor declaring that the Policy covers the losses sustained by Plaintiff, SUPER EGO HOLDING, LLC, related to the total loss of the Trailer and for such other and further relief as this Court deems just and appropriate.

## COUNT III - DECLARATORY JUDGMENT
### (Super Ego Holding, LLC v. The Littleton Group, a Davies Company)

28.     Plaintiff, SUPER EGO, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29.     An actual controversy exists which may be fully and finally determined by this Court as to the rights of each of the parties under the Policy.

30.     Pursuant to Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, this Court is vested with the power to make binding declarations of the rights and liabilities of the parties hereto under the terms and provisions of the Policy to adjudicate the final rights of all parties thereunder, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiff, SUPER EGO HOLDING, LLC respectfully requests that this Court enter a declaratory judgement in its favor declaring that the Policy covers the losses sustained by Plaintiff, SUPER EGO HOLDING, LLC, related to the total loss of the Trailer and for such other and further relief as this Court deems just and appropriate.

## COUNT IV - BREACH OF CONTRACT
### (Super Ego Holding, LLC v. Trisura Specialty Insurance Company)

28.     Plaintiff, SUPER EGO, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29.     The Policy constitutes a contract between Defendant, TRANSLIDE, Plaintiff, SUPER EGO, and Defendant, TRISURA, for the provisions of the insurance coverage in consideration of the premiums paid and in accordance with the terms and conditions of the Policy.

30.     Defendant, TRISURA, breached the contract by denying coverage and failing and refusing to pay Plaintiff, SUPER EGO, for the total loss of the Trailer and losses sustained.

31.     Plaintiff, SUPER EGO, and Defendant, TRANSLIDE, have performed all conditions required of it under the Policy including, but not limited to, payment of all premiums.

32.     Plaintiff, SUPER EGO, has been damaged by Defendant, TRISURA's, breach of the contract in an amount in excess of $50,000.00, plus its costs and attorney fees incurred in an attempt to secure coverage of the total loss to the Trailer.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court enter a judgment in its favor and against TRISURA SPECIALTY INSURANCE COMPANY in an amount in excess of $50,000.00, plus costs of this action and such other and further relief as this Court deems just and appropriate.

## COUNT V - BREACH OF CONTRACT
### (Super Ego Holding, LLC v. Wilson Insurance and Investment Group)

28.     Plaintiff, SUPER EGO, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

7

29.     The Policy constitutes a contract between Defendant, TRANSLIDE, Plaintiff, SUPER EGO, and Defendant, WILSON, for the provisions of the insurance coverage in consideration of the premiums paid and in accordance with the terms and conditions of the Policy.

30.     Defendant, WILSON, breached the contract by denying coverage and failing and refusing to pay Plaintiff, SUPER EGO, for the total loss of the Trailer and losses sustained.

31.     Plaintiff, SUPER EGO, and Defendant, WILSON, have performed all conditions required of it under the Policy including, but not limited to, payment of all premiums.

32.     Plaintiff, SUPER EGO, has been damaged by Defendant, WILSON's, breach of the contract in an amount in excess of $50,000.00, plus its costs and attorney fees incurred in an attempt to secure coverage of the total loss to the Trailer.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court enter a judgment in its favor and against WILSON INSURANCE AND INVESTMENT GROUP in an amount in excess of $50,000.00, plus costs of this action and such other and further relief as this Court deems just and appropriate.

## COUNT VI - BREACH OF CONTRACT
### (Super Ego Holding, LLC v. The Littleton Group, a Davies Company)

28.     Plaintiff, SUPER EGO, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29.     The Policy constitutes a contract between Defendant, TRANSLIDE, Plaintiff, SUPER EGO, and Defendant, LITTLETON GROUP, for the provisions of the insurance coverage in consideration of the premiums paid and in accordance with the terms and conditions of the Policy.

30. Defendant, LITTLETON GROUP, breached the contract by denying coverage and failing and refusing to pay Plaintiff, SUPER EGO, for the total loss of the Trailer and losses sustained.

31. Plaintiff, SUPER EGO, and Defendant, LITTLETON GROUP, have performed all conditions required of it under the Policy including, but not limited to, payment of all premiums.

32. Plaintiff, SUPER EGO, has been damaged by Defendant, LITTLETON GROUP's, breach of the contract in an amount in excess of $50,000.00, plus its costs and attorney fees incurred in an attempt to secure coverage of the total loss to the Trailer.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court enter a judgment in its favor and against THE LITTLETON GROUP, A DAVIES COMPANY in an amount in excess of $50,000.00, plus costs of this action and such other and further relief as this Court deems just and appropriate.

## COUNT VII - BREACH OF CONTRACT
### (Ego Express, Inc. v. Translide LLC d/b/a Translide Freight)

28. Plaintiff, EGO EXPRESS, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29. The Lease Agreement constitutes a valid and enforceable contract between Defendant, TRANSLIDE, and Plaintiff, EGO EXPRESS.

30. Plaintiff, EGO EXPRESS, performed all conditions required under the terms of the Lease Agreement.

31. Defendant, TRANSLIDE, breached the firms of the Lease Agreement by the following acts or omissions:

    a. Failing to pay EGO EXPRESS amounts due under the Lease Agreement;

9

b. Failing to pay EGO EXPRESS the purchase price of the Trailer;

c. Failing to ensure that EGO EXPRESS was an additional insured and loss payee under the Policy;

d. Failing to repair or replace the Trailer following the aforementioned damages;

e. Fraudulently claiming title to the Trailer;

f. Failing to inform EGO EXPRESS of the insurance claim opened for the damages to the Trailer;

g. Abandoning the Trailer after it was towed;

h. Permitting a lien to be placed upon the title of the Trailer; and

i. Failing to indemnify EGO EXPRESS against third-party claims.

32. As a direct and proximate result of Defendant, TRANSLIDE's, breach of the Lease Agreement, Plaintiff, EGO EXPRESS, has suffered damages in an amount in excess of $50,000.00.

33. Pursuant to the terms of the Lease Agreement, EGO EXPRESS, is entitled to recover its attorney fees and costs incurred to collect the amounts due under the Lease Agreement.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court enter a judgment in its favor and against Defendant, TRANSLIDE LLC D/B/A TRANSLIDE FREIGHT, in an amount in excess of $50,000.00, plus costs of this action and such other and further relief as this Court deems just and appropriate.

## COUNT IX – BREACH OF CONTRACT
### (Ego Express, Inc. v. Herode Fleurant)

28. Plaintiff, EGO EXPRESS, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

10

29.     The Lease Agreement constitutes a valid and enforceable contract between Defendant, FLEURANT, and Plaintiff, EGO EXPRESS.

30.     Plaintiff, EGO EXPRESS, performed all conditions required under the terms of the Lease Agreement.

31.     Defendant, FLEURANT, breached the firms of the Lease Agreement by the following acts or omissions:

a.  Failing to pay EGO EXPRESS amounts due under the Lease Agreement;

b.  Failing to pay EGO EXPRESS the purchase price of the Trailer;

c.  Failing to ensure that EGO EXPRESS was an additional insured and loss payee under the Policy;

d.  Failing to repair or replace the Trailer following the aforementioned damages;

e.  Fraudulently claiming title to the Trailer;

f.  Failing to inform EGO EXPRESS of the insurance claim opened for the damages to the Trailer;

g.  Abandoning the Trailer after it was towed;

h.  Permitting a lien to be placed upon the title of the Trailer; and

i.  Failing to indemnify EGO EXPRESS against third-party claims.

32.     As a direct and proximate result of Defendant, FLEURANT's, breach of the Lease Agreement, Plaintiff, EGO EXPRESS, has suffered damages in an amount in excess of $50,000.00.

33.     Pursuant to the terms of the Lease Agreement, EGO EXPRESS, is entitled to recover its attorney fees and costs incurred to collect the amounts due under the Lease Agreement.

11

34. Pursuant to the terms of the personal guarantee in the Lease Agreement, FLEURANT, is personally liable for all damages resulting from the breach of the Lease Agreement.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court enter a judgment in its favor and against Defendant, HERODE FLEURANT, in an amount in excess of $50,000.00, plus costs of this action and such other and further relief as this Court deems just and appropriate.

## COUNT IX - FRAUD
**(Ego Express, Inc. v. Translide LLC d/b/a Translide Freight)**

28. Plaintiff, EGO EXPRESS, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29. At all times relevant, Defendant, TRANSLIDE, knew that (a) Plaintiff, EGO EXPRESS, was the rightful owner of the Trailer; (b) Defendant, TRANSLIDE, owed money to Plaintiff, EGO EXPRESS, for the Trailer; (c) Defendant, TRANSLIDE, was not the title holder of the Trailer; and (d) Plaintiff, EGO EXPRESS, was entitled to the insurance proceeds for the total loss of the Trailer.

30. Despite this knowledge, Defendant, TRANSLIDE, misrepresented and/or omitted to state, to Defendants, TRISURA, WILSON, and/or LITTLETON GROUP the relationship of Plaintiff, EGO EXPRESS, and Plaintiff, EGO EXPRESS's, interest and ownership of the vehicle in connection with the insurance claim regarding the Trailer.

31. As a direct and proximate result of Defendant, TRANSLIDE's, false statements and/or material omissions, as well as their own negligence, Defendants, TRISURA, WILSON, and/or LITTLETON GROUP, denied to pay out the insurance claim regarding the Trailer.

12

32.     As a result of the fraudulent actions of Defendant, TRANSLIDE, Plaintiff, EGO EXPRESS, has suffered damages by not receiving the insurance proceeds or other payment for the purchase and loss of the Trailer in an amount in excess of $50,000.00.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court enter a judgment in its favor and against Defendant, TRANSLIDE LLC D/B/A TRANSLIDE FREIGHT, in an amount in excess of $50,000.00, plus costs of this action, attorney fees, punitive damages and such other and further relief as this Court deems just and appropriate.

## COUNT X - FRAUD
### (Ego Express, Inc. v. Herode Fleurant)

28.     Plaintiff, EGO EXPRESS, incorporates paragraphs 1-27 of this Complaint as if fully restated herein.

29.     At all times relevant, Defendant, FLEURANT, knew that (a) Plaintiff, EGO EXPRESS, was the rightful owner of the Trailer; (b) Defendant, FLEURANT, owed money to Plaintiff, EGO EXPRESS, for the Trailer; (c) Defendant, FLEURANT, was not the title holder of the Trailer; and (d) Plaintiff, EGO EXPRESS, was entitled to the insurance proceeds for the total loss of the Trailer.

30.     Despite this knowledge, Defendant, FLEURANT, misrepresented and/or omitted to state, to Defendants, TRISURA, WILSON, and/or LITTLETON GROUP the relationship of Plaintiff, EGO EXPRESS, and Plaintiff, EGO EXPRESS's, interest and ownership of the vehicle in connection with the insurance claim regarding the Trailer.

31.     As a direct and proximate result of Defendant, FLEURANT's, false statements and/or material omissions, as well as their own negligence, Defendants, TRISURA, WILSON, and/or LITTLETON GROUP, denied to pay out the insurance claim regarding the Trailer.

13

32.     As a result of the fraudulent actions of Defendant, FLEURANT, Plaintiff, EGO

EXPRESS, has suffered damages by not receiving the insurance proceeds or other payment for the

purchase and loss of the Trailer in an amount in excess of $50,000.00.

Wherefore, Plaintiff, SUPER EGO HOLDING, LLC, respectfully requests that this Court

enter a judgment in its favor and against Defendant, HERODE FLEURANT, in an amount in

excess of $50,000.00, plus costs of this action, attorney fees, punitive damages and such other and

further relief as this Court deems just and appropriate.

Dated this 22nd day of December, 2023.

/s/ Luka Madzarac
Attorney for the Plaintiffs

Luka Madzarac
Litigation Counsel
Super Ego Holding, LLC/ Ego Express Inc.
luka@superegoholding.net
(331) 808-5039
DuPage #379203 clk

14

Exhibit A

## BILL OF SALE

ENTERED into this __22nd__ day of __May_____, 20_23_ at Park Ridge, Illinois between:

**SELLER:**

NAME:    **Ego Express**           **Floyd Inc.**

ADDRESS:  1517 N DEE RD.         729 N. IL Rt. 83, Suite 324
           Park Ridge, IL 60067     Bensenville, IL 60106

**AND**

**BUYER:**

BUYER NAME: _TRANSLIDE LLC_____

BUYER ADDRESS: __2439 W 16TH ST_____

CITY/STATE/ZIP: _INDIANAPOLIS, IN 46222_____

**EQUIPMENT:**

**YEAR:**__2016_____

**MAKE:**__VANGUARD_____

**MODEL:**_Dry van_____

**VIN#:**__5V8VC5327GM603938_____

**PRICE:**

**Sales Price: $**_29,000.00_____

**Down Payment: $**__2,000.00_____ **(if applicable)**

**Payments: $**_____ weekly or $_931.03____monthly

**Total # of Payments:** _29_____

**Warranty Included:** _____Yes      _____NO

Doc ID: 66825d47b5b6a07170d8a502335c7b48683eaf5e

*****TITLE TRANSFER TO TAKE PLACE NO LATER THAN 45 DAYS FROM FINAL PAYOUT OF ALL SUMS DUE UNDER THE BILL OF SALE AND THE ATTACHED EQUIPMENT LEASE AGREEMENT. SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AS TO LEASED EQUIPMENT.*****

*Aleksandar Mimic*

_____

**SELLER / LESSOR SIGNATURE**

_____

BUYER / LESSEE SIGNATURE

Aleksandar Mimic

_____

**SELLER/LESSOR PRINTED NAME**

Fleurant Herode

_____

BUYER / LESSEE SIGNATURE

**IN THE STATE OF ILLINOIS:**

**COUNTY OF COOK:**

**The above-referenced parties, personally present before me, did set their hands and seals to the foregoing document this _____ day of _____, 20_____ at Park Ridge, Illinois.**

_____ (SEAL)

**Notary Public, State of Illinois**

**My Commission Expires: ___/___/_____**



STATEMENT OF PERSONAL GUARANTEE

This Guarantee dated this __22__ day of __May__ 20 _2023_ is for the purpose of a Personal Guarantee as to all clauses of this Lease. The undersigned does sign, with personal responsibility and obligation, does agree to be held responsible for ANY/ALL charges, invoices, fees, interest, obligations and provisions of this LEASE. If Lessee should become insolvent or out of business, this Personal Guarantee shall serve to make the undersigned personally liable for all sums due from their personal accounts and or assets. If Litigation becomes necessary for Lessor to enforce the provisions and clauses of this Agreement, then the Personal Guarantor shall be responsible for ANY/ALL fees or costs incurred by Lessor, including but not limited to court costs, witness testimony, attorney and paralegal fees, etc., whether or not the Lessor is successful in its Litigation of the Agreement. Personal Guarantor agrees that Illinois is the proper Jurisdiction of any/all matter relating to the enforcement of any provision of this Lease and this Personal Guarantee, unless another jurisdiction is decided on by Lessor as a convenience to operating out of any other office in any other state.

Signed this __22__ day of __May__ ,20 _23_

Personal Guarantor Signature: _____

Personal Guarantor Printed Name: _Fleurant Herode_____

Personal Guarantor Address: _____
_2439 W 16th St Indianapolis IN 46222_____

Personal Guarantor Social Security Number: ██████████_____

Personal Guarantor Date of Birth: _04/06/1985_____

Date: _05 / 22 / 2023_____

# EQUIPMENT LEASE TO PURCHASE AGREEMENT
# TRAILER LEASE TO PURCHASE ONLY (NOT CONTRACTOR)

This **EQUIPMENT LEASE AGREEMENT** is hereby entered on this _22_ day of

_May_____, 2023_ between _TRANSLIDE LLC_____ SS#/FEIN: ▇▇▇▇▇▇▇

("Lessee") and Ego Express Inc, a CORPORATION organized under the laws of the State
of Illinois ("Lessor"). Lessor and Lessee shall collectively be known here in as "the Parties".

**WITNESSETH:**

**WHEREAS,** Lessor is the owner of certain tangible personal property further described below and
desirous of leasing same to Lessee on the terms and under the conditions as contained herein ; and
**WHEREAS,** Lessee is desirous of leasing the certain tangible personal property further described
below from Lessor on the terms and under the conditions as contained herein;
**WHEREFORE,** for good consideration and mutual promises, the Parties, intending to be legally
bound hereby, agree and contract as follows:

**Leased Equipment:**

Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the following described
equipment ("Leased Equipment"):

Year: _2016___ Make: VANGUARD_____ VIN# _5V8VC5327GM603938_

**Lease Terms:**

This lease agreement shall be for a term of _29___ months or _____weeks, commencing on
_05_ / _22_ / _2023___. Lessee's obligation to pay the Lease Payments and other Lease obligations is
absolute and unconditional and is not subject to cancellation (except as provided below), reduction,
setoff or counterclaim. This Lease shall continue until all Monthly Payments have been made
whether or not Lessee retains possession of the Equipment.

**Purchase Option: $1.00** at the end of the Lease Term provided that Lessee is not in default.

**Lease Payments:**

Lease payments shall be $_931.03___ per✓ month or ___week. The initial down payment due upon
execution is $_2,000.00_ (if applicable) with the first payment due ___/___/_____.Under this
lease agreement a total of_29___ monthly or_____weekly payments in the amount of $_931.03_____
shall be due to Lessor from Lessee. After the first monthly payment Lessee shall continue making
lease payments every ✓ month or ____week with payment due on the same day of each
subsequent month or week as the first payment. There shall be a late charge of $50 for any Payment
that is not timely made in any given week. The initial down payment, if any, is non-refundable in
case this agreement is terminated for any reason.

**Lessor's Direction for Delivery of Lease Payments:**

Lessee shall pay to Lessor all payments by the way of ACH or Wire Transfer. If, in a week, for any reason whatsoever, including but not limited to, breakdown, disrepair or accident, Lessee shall not work, the payment for that week shall still be due. Lessor may hereafter change this direction to Lessee for delivery of lease payments by serving Lessee with written notice containing new payment instructions.

**Subleasing:**

Lessee shall be prohibited from "sub-leasing" the trailer to any other party however; Lessee shall be allowed to lease to another Motor Carrier provided that all information regarding that Motor Carrier (for purposes of Registration) is accurate and made available as soon as possible. Lessee shall not use, not cause to be used, the equipment for anything other than transport of freight at the Motor Carrier that Lessee has provided to Lessor. If Lessee, changes Motor Carriers, then Lessee must notify Lessor of this change, in writing, within 24 hours of changing companies.

**Delivery of Leased Equipment:**

Lessee is to take delivery of the leased equipment on or after 05 / 22 / 2023 at the Lessor's direction as to location to take delivery.

**GPS Tracking:**

Lessee agrees that during the Lease Term, Lessor may install a GPS Tracking device on the Equipment. The Lessee is prohibited from removing/altering the GPS Tracking device and will comply with all company policies regarding such device. Removal or altering of the GPS device will constitute a breach of this contract. Once all the payments have been made and title is transferred to Lessee, only then is Lessee allowed to remove the GPS device belonging to the Lessor.

**Drivers and Restrictions on Use:**

Lessee and Lessor agree that the Lessor has an interest in protecting its interest in the Equipment by ensuring that the Lessee engages in the safe operation of the Equipment and in ensuring that Lessee performs regular and adequate State and Federally-mandated maintenance of the Equipment. Lessee shall not use the Equipment in violation of any Federal, State, or local statutes, laws, ordinances, rules or regulations, or contrary to the provisions of any applicable insurance policy, including, but not limited to, Department of Transportation Hours of Service Regulations, and Vehicle Inspection and Maintenance Regulations. Any violations of Federal, State or local statutes by Lessee including, but not limited to, Department of Transportation Hours of Service Regulations, and Vehicle Inspection and Maintenance Regulations shall constitute a material breach of this Lease. Lessee's use of the Equipment shall comply with all insurance requirements, all applicable laws and regulations concerning the maintenance and operation of such Equipment in interstate commerce and all applicable manufacturer recommendations concerning the maintenance and operation of the Equipment. Lessee agrees to have all manufacturer service bulletins and recalls performed on the Equipment during the term of the Lease and bear all expenses related thereto. Lessee agrees that Lessee will not materially alter or modify the Equipment during the Lease period without prior written notice to and written approval from the Lessor.

Doc ID: 66825d47b5b6a07170d8a502335c7b48883eaf5e

**Removal of Logos and Signs**

Unless otherwise agreed, the Lessee is prohibited from removing, altering, or destroying any logos or signs from any equipment belonging to the Lessor during the term of the lease. This includes but is not limited to the Lessor logos placed on trailers or on the side of the trucks. Violation of this clause constitutes a breach of this agreement, and the Lessee will be responsible for the replacement cost of any damaged or altered company logo or sign.

**Repairs and Maintenance:**

Lessee is required, at Lessee's own cost and expense, to keep the Equipment in good repair, condition and working order, except for ordinary wear and tear, and Lessee will supply and bear the expense of all parts and labor required to keep the Equipment in good repair and condition. All replacement parts used or installed and repairs made to the Equipment will become Lessor's property. All replacement parts used or installed and repairs made to the Equipment shall be of the same type and quality as those furnished by Lessor. If the Equipment is covered by a manufacturer warranty at the time of the execution of this agreement, only then will the Lessee not be responsible for the repairs, parts, mechanisms or devices installed on the Equipment that are covered under the warranty. The Lessee is responsible for amounts due above and beyond the warranty coverage. Should Lessor have to make any repairs to the Equipment based on Lessee's failure to do so, those sums will be deducted from Lessee's revenue statements or from any sums held by the Motor Carrier at termination of the Lease Agreement by either party or at the Pay-Off of the Leased Equipment

LESSEE ACKNOWLEDGES THAT LESSOR IS NOT RESPONSIBLE FOR PROVIDING ANY REQUIRED MAINTENANCE AND/OR REPAIRS FOR THE EQUIPMENT DURING THE TERM OF THE LEASE.

**Warranty:**

Lessor is leasing the Equipment to Lessee "AS - IS" and Lessee acknowledges that Lessor is not the manufacturer of the Equipment or an agent of the manufacturer of the Equipment. **LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR TITLE. IN NO EVENT SHALL LESSOR HAVE ANY LIABILITY FOR NOR SHALL LESSEE HAVE A CLAIM OR REMEDY AGAINST LESSOR FOR CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR PUNTIVE DAMAGES, OR FOR ANY LOSS OF PROFITS OR SAVINGS, LOSS OF USE OR ANY OTHER COMMERCIAL OR ECONOMIC LOSS.** Lessor is not responsible for any repairs to or the performance of the Equipment or for any maintenance or service to the Equipment. If a warranty exists from the manufacturer of the Leased Equipment, Lessor shares its rights to said warranty with Lessee for the duration of the agreement.

**Loss and Damage:**

Lessee is solely responsible for all loss, destruction or damage to the Equipment and Lessee agrees to assume the risk of all such loss, destruction or damage to the Equipment. No such loss, destruction or damage to or loss of use of the Equipment shall relieve Lessee from any obligation under this Lease including, but not limited to, Lessee's continuing duty to make Lease payments. In the event of loss or damage to the equipment, Lessee shall, at the Lessor's discretion; (i) replace or repair the Equipment to the Lessor's acceptable satisfaction or (ii) pay the replacement cost of the Equipment to the Lessor.



**Insurance:**

During the term of this Lease, Lessee at its sole expense will keep the Equipment insured against all risks of loss or damage from every cause whatsoever, including but not limited to collision, theft, fire, weather, and natural disaster, in an amount not less than the full replacement value of the Equipment and naming Lessor as sole loss payee, with a deductible no greater than five thousand dollars ($5,000.00). In addition, Lessee will obtain and maintain or cause to be obtained and maintained at Lessee's sole expense for the term of this Lease comprehensive public liability insurance with bodily injury and property damage limits in an amount no less than $1,000,000.00 and naming Lessor as additional insured. Lessee will pay all premiums for such insurance and must deliver proof of insurance coverage satisfactory to Lessor.

If Lessee does not provide or provide for insurance required under this Lease, Lessee agrees that Lessor shall have the right but not the obligation to obtain such insurance and charge Lessee an insurance fee, on which Lessor may impose an administrative charge. The payment of the insurance is due together with the lease payment. Any failure to obtain insurance set forth herein shall represent a material default under this Lease and Lessor may claim immediate possession without process of law. Lessee grants to Lessor an irrevocable power of attorney to make claim for and receive and endorse all checks and other documents received as payment under such insurance policies.

Lessee agrees that it shall comply with all the terms and conditions of its policies of insurance, including the immediate reporting of all accidents to the Lessor and Lessee's Insurer. In the event of a claim, in addition to any other amounts due, Lessee agrees to pay Lessor the amount of Lessee's deductible within 15 days of the occurrence giving rise to the claim. The Lessee is responsible for making all rent/lease payments owed during the claim process until the insurance proceeds are received by the Lessor. Where Lessee has leased the Equipment to operate under the Federal Motor Carrier authority of a Federally-authorized motor carrier, Lessee may provide Lessor proof of comprehensive public liability insurance with bodily injury and property damage insurance held by said Federally-authorized motor carrier to satisfy the comprehensive public liability insurance requirement.

If the Equipment is involved in any total loss accident during the lease term, all amounts still due to Lessor shall be satisfied first. Any excess funds left after the Lessor has been paid out shall be returned to the Lessee and the agreement shall be terminated. In the case were insurance proceeds do not cover the fair market value of the Equipment, the Lessee is responsible for any additional amounts due. If the Equipment is involved in any accident which is not deemed a total loss and Lessor is in charge of repairs, the Lessee shall pay any deductible due to the insurance company from the Lessor.

Doc ID: 66825d47b5b6a07170d8a502335c7b48883eaf5e

**Indemnity of Lessor against third-party claims:**

Lessor is not and shall not be responsible for any losses or injuries caused by the manufacture, acquisition, delivery, ownership, use, lease, possession, maintenance or operation of the Equipment or defects in the Equipment. Lessee agrees to indemnify and hold harmless the Lessor and any affiliated companies, including their owners, successors, heirs and assigns, directors, officers, agents, attorneys, employees, representatives, and insurers, jointly and severally, from and against any and all losses, costs, damages, claims or expense, including, without limitation, attorneys' fees, incurred by the Lessee and other indemnitees, or any of them, arising out of the manufacture, acquisition, delivery, ownership, use, lease, possession, maintenance or operation of the Equipment or defects in the Equipment. Lessee further agrees to indemnify Lessor and other indemnitees, or any of them, for any attorneys' fees expended in enforcement of this paragraph.

**Taxes and Fees:**

Lessee agrees to pay or ensure that the motor carrier under whose authority Lessee is leased pays all license and registration fees, sales and use taxes, personal property taxes and all other taxes and charges related to the ownership, leasing, rental, purchase, possession or use of the Equipment (except those based on Lessor's net income) in addition to the Monthly Payment as billed by Lessor to Lessee. Lessee agrees that if Lessor pays any taxes or charges on Lessee's behalf, Lessee will reimburse Lessor for all such payments and will pay Lessor 18% interest or at the maximum rate legally allowable and a late charge on such payments with the next Monthly Payment, plus such reasonable costs incurred in collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities.

**Purchase Option & Surrender:**

Effective at the end of the Lease Term, provided that the Lessee is not in Default under this Agreement, Lessee shall have the option to purchase the Equipment for $1.00. Lessee shall provide written notice of its election to purchase the Equipment no later than the last day of the Lease Term. In the event Lessee does not elect to purchase the Equipment on or before the last day of the Lease Term or in the event the Lessee is in Default of the agreement, Lessee shall return the Equipment to Lessor at the location designated by Lessor, freight prepaid, in as good condition as when the Equipment was received by Lessee, less ordinary wear and tear. The vehicle will be returned to the same location where it was picked up at or at the location designated by the Lessor.

In any event, whenever the Equipment is returned to Lessor under this Agreement for any reason, the Equipment shall be in a condition compliant with all Department of Transportation guidelines and requirements and in a condition under which it may be safely and legally operated on the public highways. Lessee shall return the Equipment at the location specified by the Lessor, and agrees to be solely responsible for paying the parts and labor costs for any and all repairs or replacement of parts necessary to restore the Equipment to the condition in which the Equipment was provided to Lessee.

At the time of early termination, all payments made towards the purchase shall be converted to "rental payments" and shall be retained, in full, by Lessor. If Lessor must arrange to repossess the equipment, the cost of repossession shall be paid by the Lessee.

**Default & Termination:**

Lessee shall be in default of this Lease in the event any of the following occurs; (a) Lessee fail to make any Monthly payment or other payment when due; (b) Lessee breaches any obligation under this Lease, or any other agreement with Lessor; (c) Lessee or any guarantor dies; (d) Lessee becomes insolvent or unable to pay Lessee's debts when due; (e) Lessee stops doing business as a going concern; (f) Lessee transfers all or substantially all of Lessee's assets; (g) Lessee makes an assignment for the benefit of creditors; (h) Lessee or a guarantor voluntarily files for bankruptcy or has bankruptcy involuntarily filed against Lessee; (i) a trustee, receiver, or liquidator is appointed for Lessee or a guarantor; or (j) Lessee violates any Federal, State or local law or regulation governing the operation of the Equipment including, but not limited to, Department of Transportation Hours of Service Regulations, and Vehicle Inspection and Maintenance Regulations. Lessor reserves the right to terminate this Agreement, for any reason whatsoever.

**If Buyer defaults or breaches this agreement, Buyer will be charged $100 per month for brake/tire maintenance/use for every month the trailer was in Buyers Posession.**

**Remedies:**

If Lessee fails to make any payment or violates any provision of this agreement, the Lessor may, but is not required to give written notice to the breaching party. The Lease shall have (10) days from the receipt of notice to cure the default (Cure Period). In the event that the default is not cured, the Lessor shall then have the right to exercise any one or more of the following remedies: (1) Lessor may declare the entire balance of the unpaid Monthly Payments for the full term and all other amounts then due immediately due and payable. (2) Lessor may sue for and receive all Monthly Payments and other payments then accrued or accelerated under this Lease, including but not limited to late fees, expenses and other charges. All accelerated Monthly Payments shall accrue interest at a rate of eighteen percent (18%) per year; (3) Lessor may terminate the Lease; (4) Lessor may require Lessee to return the Equipment to Lessor and, in the event Lessee fails to return the Equipment, Lessor may enter upon Lessee's premises peaceably with or without legal process where the Equipment is located and repossess the Equipment. Such return or repossession of the Equipment will not constitute a termination of this Lease unless Lessor expressly notifies Lessee of such in writing. Lessee shall continue to be liable for the contractual lease payments due under this agreement. In the event the Equipment is returned to Lessor or repossessed by Lessor and, unless Lessor has terminated this Lease, Lessor may sell or re-lease the Equipment to any persons upon any terms Lessor may choose in its sole discretion, with or without notice to Lessee. Should Lessor elect to repossess the Leased Equipment, Lessee shall be liable to Lessor for all costs and expenses associated with such repossession; or (5) Lessor may set-off the funds due to Lessor under this Lease against any amounts owed by Lessor to Lessee or held by Lessor for the benefit of Lessee including, but not limited to, amounts held by Lessor in escrow and amounts held by Lessor as security deposit under this Lease. If the vehicle is repossessed by the Lessor for any reason, the Lessor may, but is not obligated to hold in storage for 10 days any personal items belonging to the Lessee.

**Acceleration:**

A. **Acceleration of Lease Payments**. Should Lessee be in default, fail to cure the default prior to expiration of the Cure Period, and Lessor take possession of the Leased Equipment prior to expiration of the Lease Term (or has made a written demand upon Lessee for return of the Leased Equipment for which Lessee failed to comply with), all payments due to Lessor during the life of this equipment lease agreement shall be accelerated, thus becoming immediately due and payable by Lessee to Lessor as of the date of expiration of the Cure Period. This shall be known as the "Acceleration Clause."

Doc ID: 66825d47b5b6a07170d8a502335c7b48883eaf5e

B. **Present Value Discount of Accelerated Lease Payments**. Should the Acceleration Clause apply, the amount payable by Lessee under the Acceleration Clause shall be discounted from the future due date of the lease payment (as originally required under the Lease Agreement) to the present value at the date of collection by Lessor using a discount rate of 8%.

C. **Re-Lease or Sale of Leased Equipment after Repossession**. Should Lessor find a new lessee or buyer of the Leased Equipment prior the expiration of the Lease Term, any payments received from the new lessee or buyer during the Lease Term shall be first netted against Lessor's expenses incurred effecting the rental or sale of the Lease Equipment, and then offset against amounts owed by Lessee to Lessor under this equipment Lease Agreement. Should the amount collected by Lessor from any new lessee or buyer of the Leased Equipment (after net of releasing or sales expenses) exceed the amount then owed by Lessee to Lessor, the excess (if any shall be refunded to Lessee. Any amounts received by Lessor through re-lease or sale of the Leased Equipment **after** expiration of the Lease Term shall not be offset against amounts owed by Lessee to Lessor under this lease agreement and shall not otherwise be refunded to Lessee.

**Attorney Fees and Expenses:**

Lessee agrees to pay all expenses incurred by Lessor in connection with the enforcement of any remedies under this Lease, including but not limited to, expenses of repossessing, storing, shipping, repairing and selling the Equipment and attorneys' fees.

**Joint and Several Liabilities:**

If there is more than one Lessee, (or if the Lessee is a Corporation) all lessees hereby agree to be jointly and severally liable for any breach of the terms of this agreement. The Lessee understands that they are obligated both personally and through their company for the faithful performance of all covenants of this agreement.

**Bankruptcy:**

Neither this Lease, nor any interest therein, is assignable or transferable by operation of law. If any proceeding under the Bankruptcy Act, as amended, is commenced by or against the Lessee, or if the Lessee is adjudged insolvent, or if Lessee makes any assignment for the benefit of his creditors, or if a writ of attachment or execution is levied on the Equipment and is not released or satisfied within ten ( 10 ) days thereafter, or if a receiver is appointed in any proceeding or action to which the Lessee is a party with authority to take possession or control of the Equipment, Lessor may exercise any one or more of the remedies mentioned previously. If Lessor elects to terminate the agreement, this Lease shall not be treated as an asset of Lessee.

**Title:**

During the Lease Term, the Lessor owns and retains title to the Equipment and Lessee has the right to use the Equipment for the full Lease term provided Lessee complies with all of the terms and conditions of this Lease. Lessee agrees not to permit a lien of any kind to be placed on the Equipment. In the event Lessee permits a lien to be placed on the Equipment, such will constitute a breach of the Lease and Lessee agrees that Lessor may, but is not required to, satisfy the lien in Lessor's own discretion and Lessee shall be responsible for compensating the Lessor for any payments so made.



**Assignment:**

Lessee agrees that Lessee shall not transfer, sell, sublease, assign, pledge or encumber either the Equipment or any rights under this Lease without the prior written consent of the Lessor. Lessee is to retain possession of the Leased Equipment at all times during this agreement except upon demand of surrender by Lessor or repossession by Lessor. Lessor shall have the unilateral right to assign its interest in this lease to a third-party.

**Acknowledgement And Subordination Language:**

Lessee acknowledges and agrees that all of its rights under the Lease Agreement with Lessor in and to the Property, including Lessee's right to possession of the property, aresubordinate, junior and subject to the rights and claims of any assignee of Lessor("Assignee") against the Property under any financing documents or security agreement,whether now existing or hereafter created, including but not limited to the right of Assigneeto take possession of the Property. Lessee consents and agrees to the assignment of (i) allmonies due or to become due to Lessor under the Lease Agreement and (ii) all right andprivileges of Lessor under the Lease Agreement. Lessee promises and agrees to settle allclaims against Lessor directly with Lessor and hereby waives, relinquishes and disclaims as toAssignee all counterclaims, rights of set-off, and defenses Lessee may have against Lessor, including any right to withhold payments of or refrain from paying, any monies that are dueto become due under the terms of the Lease Agreement; except that Lessee shall not be liable to Assignee for monies paid to Lessor prior to the time Assignee notifies lessee to pay Assignee directly.

**Hazmat And Telematics Language:**

Lessee further agrees that throughout the term of this Agreement (a) it will not permit theProperty to be used for the transportation of passengers or for the digging, hauling, loading,storing ortransporting of material designated as hazardous, radioactive, toxic, flammable,explosive or environmentally hazardous, unsafe or dangerous under any federal, state orlocal law or rule; and (b) it will not interfere with the operation of any telematics system inany Property; and that Assignee may monitor or access the Property's utilization, locationand other information or reports contained in or generated by any such telematics system toensure compliance with any Agreement related to the Property; or for any other lawfulpurpose; and may use any telematics system or information generated by the telematicssystem to locate the Property.

**Additional Documents:**

Lessee shall provide at the request of Lessor any and all documents necessary for the purpose of recording and filing to protect the interest of the Lessor in the Equipment. These documents may include a UCC financial statement.

**Notices:**

All notices, demands and communications required or desired to be given in connection with this Lease shall be in writing and shall be deemed to have been duly given on the date received if delivered personally, by courier service, or by electronic means or, if mailed, on the third day after mailing upon the party shown below.

Doc ID: 66825d47b5b6a07170d8a502335c7b48883eaf5e

**Integration:**

This Agreement sets forth the entire understanding of the parties hereto and supersedes all prior agreements, whether oral or written, pertaining to the subject matter hereof. This is an integrated agreement.

**Severability:**

In the event any of the terms of this Lease are determined to be invalid or unenforceable, no other terms shall be affected and the unaffected terms shall remain valid and enforceable as written. The representations, rights and obligations of the parties hereunder, including but not limited to Lessor's right to recover Lease Payments shall survive termination of this Lease for any reason.

**Non-Waiver:**

Neither the failure of Lessor to exercise any right, power or privilege under this Lease, nor its delay in any such exercise, shall operate as a waiver of that right, power or privilege.

**Modification:**

No provision of the Agreement may be modified, except by a writing duly signed and acknowledged by each of the parties hereto. Lessee agrees, however, that Lessor is authorized to supply missing information or correct obvious errors in this Lease.

**Non-Disparagement:**

The Lessee acknowledges and agrees that the Lessee will not defame or criticize the services, business, integrity, veracity, or personal or professional reputation of the Lessor or any of its directors, officers, employees, affiliates, or agents of any of the foregoing in either a professional or personal manner either during the term of this agreement or thereafter.

**Acknowledgments:**

Each party acknowledges that he or she had an adequate opportunity to read and study this Agreement, to consider it, and to consult with an attorney if he/she desires. Lessee warrants that Lessee has complete authority to enter into this Lease on behalf of Lessee, that the Lease is legal, valid, binding and enforceable against Lessee in accordance with its term and that all information supplied by Lessee to Lessor, including all financial information, is true correct and complete.

**Venue and Personal Jurisdiction:**

Lessee consents to and agree that the Courts located in the State of Illinois shall have personal jurisdiction over Lessee. Lessee agrees that venue for any action related to the Equipment or any action interpreting or enforcing any of the terms of this Lease shall lie solely in the State and Federal Courts located in DuPage and/or Cook Counties in the State of Illinois.

**Choice of Law:**

This Agreement shall be constructed under the laws of the State of Illinois.

**IN WITNESS WHEROF**, and acknowledging acceptance and agreement to the foregoing, **LESSOR** and **LESSEE** affix their signature hereto as of the date written on page 1 hereof.

LESSOR                                                           LESSEE

*Aleksandar Minic*                                          _____

Authorized representative

**EGO EXPRESS INC**                                    Owner/Operator
**FLOYD INC.**
                                                                      Address: _2439 W 16th St_____
                                                                      City/State: __Indianapolis IN 46222__
                                                                      Phone#: (443) 365-1632_____
                                                                      SS# or FEIN#: ████████████

In the State of Illinois:
County of Du Page:

The above parties, personally present before me, did set their hands and seals to the foregoing document this _____ day of _____ 20____ at Bensenville, Illinois.

_____ (SEAL)
Notary Public, State of Illinois
My Commission Expires: _____/_____/_____



**✖ Dropbox** Sign                                              Audit trail

| | |
|---|---|
| Title | Unit #603938 |
| File name | Trailer Bill of S... finalized (1).pdf |
| Document ID | 66825d47b5b6a07170d8a502335c7b48883eaf5e |
| Audit trail date format | MM / DD / YYYY |
| Status | ✴ Signed |

## Document History

| | | |
|---|---|---|
| ⟲ **SENT** | **05 / 22 / 2023** 19:36:26 UTC | Sent for signature to Fleurant Herode (translide1@gmail.com) from contracts@superegoholding.net IP: 91.150.68.254 |
| ⊚ **VIEWED** | **05 / 22 / 2023** 19:37:37 UTC | Viewed by Fleurant Herode (translide1@gmail.com) IP: 107.116.7.32 |
| ↙ **SIGNED** | **05 / 22 / 2023** 19:41:34 UTC | Signed by Fleurant Herode (translide1@gmail.com) IP: 107.116.7.32 |
| ⊘ **COMPLETED** | **05 / 22 / 2023** 19:41:34 UTC | The document has been completed. |








POLICY # CW3532551-00

**Cover Whale**

TRANSLIDE LLC

# COMMERCIAL TRUCKING
# AUTOMOBILE PHYSICAL DAMAGE



| Insured Name | TRANSLIDE LLC<br>TRANSLIDE FREIGHT |
|---|---|
| Address | 2439 W 16TH ST<br>INDIANAPOLIS, IN 46222 |
| Policy Term | From: Aug 10, 2023   To: Aug 10, 2024 |

Issued By:
Cover Whale Insurance Solutions Inc.
CA License No 0M87896

www.CoverWhale.com

**Cover Whale**

POLICY # CW3532551-00

TRANSLIDE LLC

POLICY NUMBER: CW3532551-00                                         **AUTO PHYSICAL DAMAGE**

# MOTOR CARRIER DECLARATIONS - APD

**ITEM ONE**

| Company Name: | Trisura Specialty Insurance Company |
|---|---|
| Producer Name: | Wilson Insurance and Investment Group |
| Named Insured: | TRANSLIDE LLC TRANSLIDE FREIGHT |
| Form of Business: | LLC |
| Mailing Address: | 2439 W 16TH ST |
| | INDIANAPOLIS, IN 46222 |

| Policy Period | | |
|---|---|---|
| **From:** | Aug 10, 2023 | |
| **To:** | Aug 10, 2024 | At 12:01 AM Standard Time at your mailing address shown above |
| **Previous Policy Number:** | N/A | |

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

| | |
|---|---|
| **Premium Shown Is Payable At Inception:** | $ 24,276.00 |
| **Audit Period** (if applicable): | **N/A – Only Scheduled Vehicles, Trailer and Drivers are covered** |

| Endorsements Attached To This Policy | | |
|---|---|---|
| **Form Title** | **Form Number** | **Edition Date** |

| COVER WHALE MOBILE APP NOTICE | CW APP | 11 22 |
|---|---|---|
| Cover Whale Policy Jacket (Auto Physical Damage) | CWIS Cover APD 04 | 22 |
| MOTOR CARRIER DECLARATIONS - APD | CWPDDEC | 0122 |
| APD DEC TAXES, FEES, TOTAL COST | CW APD DEC SUM | 06 22 |
| MOTOR CARRIER COVERAGE FORM APD | CW PD CA 00 20 | 01 22 |
| COMMON POLICY CONDITIONS | IL 00 17 | 11 98 |
| LESSOR – ADDITIONAL INSURED AND LOSS PAYEE | CA 20 01 | 11 20 |
| UNDECLARED DRIVER EXCLUSION | CW CA 402 | 11 20 |
| EARLIER NOTICE OF CANCELLATION PROVIDED BY US | CA 04 22 | 11 20 |
| EXCLUSION OF TERRORISM | CA 23 84 | 10 13 |
| NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT | IL 00 21 | 09 08 |
| U.S. TREASURY DEPARTMENT'S OFAC NOTICE | IL P 001 | 01 04 |
| CALCULATION OF PREMIUM | IL 00 03 | 09 08 |
| State Fraud Warnings | CW SFW | 01 21 |
| NON-OWNED TRAILER ENDORSEMENT | CWISNOT1 | 12 21 |
| Surplus Lines Notice (Multi-State) | CW SL | 12 20 |
| CLAIMS NOTICE CW | CW Claim Notice | 10 22 |

**ITEM ONE** (Cont'd)

| Countersignature Of Authorized Representative | |
|---|---|
| **Name:** | Daniel Abrahamsen |
| **Title:** | Chief Executive Officer |

**Signature:**

**Date:**       Aug 10, 2024

1. **Schedule Of Coverages And Covered Autos.**

   This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Motor Carrier Coverage Form next to the name of the coverage.

| Coverage | Covered Perils | Covered Auto Symbol | Limit of Insurance | Deductible each Covered Auto | Premium |
|---|---|---|---|---|---|
| Physical Damage – "Autos" | Comprehensive<br><br>Collision | 67<br><br>67 | 200,000 | See Vehicle or Trailer Schedule | 14,360.00 |
| Physical Damage – "Trailers" | Comprehensive<br><br>Collision | 67<br><br>67 | 120,000 | See Vehicle or Trailer Schedule | 8,616.00 |
| Trailer Interchange | Comprehensive<br><br>Collision | 69<br><br>69 | 0 | 2,500 | 0 |
| Physical Damage Towing And Labor | Comprehensive<br><br>Collision | 67<br><br>67 | 25,000 | | INCLUDED |
| Maximum limit per occurrence | | 67 | $1,000,000 | 2,500 | |

2.  **DRIVER SCHEDULE** – Only the following individuals are covered operators under this policy.

| Driver Name(s) | See below – only scheduled drivers are covered |
|---|---|
| Reporting | N/A - Only scheduled drivers are covered |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| HERODE FLEURANT | 1985-04-06 | 9370578053 (IN) | None | Y |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| WILSON VIDAL | 1975-05-11 | 156723419 (NY) | None | Y |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| WESLER HERVE | 1991-01-22 | 5330320243 (IN) | None | Y |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| ANNDEL ALISMA | 1979-12-01 | A425000794520 (FL) | None | Y |

The following exclusion is added to the policy: This insurance does not apply to any loss involving a **covered vehicle** while being driven or operated by or under the care, custody or control of any driver excluded above (as indicated with a "N" for "Not Covered").

3. **VEHICLE SCHEDULE – Only the following vehicles are "covered autos" under this policy.**

| Vehicle | Only Scheduled Vehicles, Trailer and Drivers are covered |
|---|---|
| Reporting | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |

| Covered Auto Number: | 1 | |
|---|---|---|

**Town And State Where The Covered Auto Will Be Principally Garaged:**

Per Schedule on File with Cover Whale Insurance Solutions Inc.

| **Covered Auto Description** | | | | | |
|---|---|---|---|---|---|
| Year: | 2021 | Model: | CASCADIA | Trade Name: | FREIGHTLINER |
| Body Type: | Tractor/Truck | | | Serial Number(s): | |
| Vehicle Identification Number (VIN): | 1FUJHHDR5MLMM0815 | | | | |

**Classification**

| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVWR, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
|---|---|---|---|---|---|---|
| N/A | Unlimited | C | Tractor/Truck | N/A | N/A | N/A |

Loss Payee Name and Address: Per Schedule on File with Cover Whale Insurance Solutions Inc.

| **Coverages – Premiums, Limits And Deductibles** | | |
|---|---|---|
| (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | |
| **Coverages** | **Limit** | **Deductible** |
| Covered Autos Liability | NOT COVERED | NOT COVERED |
| Personal Injury Protection | NOT COVERED | NOT COVERED |
| Added Personal Injury Protection | NOT COVERED | NOT COVERED |
| Property Protection Insurance (Michigan Only) | NOT COVERED | NOT COVERED |
| Auto Medical Payments | NOT COVERED | NOT COVERED |

| | | |
|---|---|---|
| Medical Expense And Income Loss Benefits (Virginia Only) | NOT COVERED | NOT COVERED |
| Comprehensive | 100000 | 2500 |
| Specified Causes Of Loss | 100000 | 2500 |
| Collision | 100000 | 2500 |
| Towing And Labor | | |

| | |
|---|---|
| Covered Auto Number: | 2 |

**Town And State Where The Covered Auto Will Be Principally Garaged:**

Per Schedule on File with Cover Whale Insurance Solutions Inc.

| Covered Auto Description | | | |
|---|---|---|---|
| Year: | 2022 Model: | CASCADIA | Trade Name: | FREIGHTLINER |
| Body Type: | Tractor/Truck | | Serial Number(s): | |
| Vehicle Identification Number (VIN): | 3AKJHHDR7NSNS8596 | | | |

| Classification | | | | | | |
|---|---|---|---|---|---|---|
| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVWR, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
| N/A | Unlimited | C | Tractor/Truck | N/A | N/A | N/A |

Loss Payee Name and Address: Per Schedule on File with Cover Whale Insurance Solutions Inc.

## Coverages – Premiums, Limits And Deductibles

(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in

| the corresponding Item Two column applies instead.) | | |
|---|---|---|
| **Coverages** | **Limit** | **Deductible** |
| **Covered Autos Liability** | NOT COVERED | NOT COVERED |
| **Personal Injury Protection** | NOT COVERED | NOT COVERED |
| **Added Personal Injury Protection** | NOT COVERED | NOT COVERED |
| **Property Protection Insurance (Michigan Only)** | NOT COVERED | NOT COVERED |
| **Auto Medical Payments** | NOT COVERED | NOT COVERED |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | NOT COVERED | NOT COVERED |
| **Comprehensive** | 100000 | 2500 |
| **Specified Causes Of Loss** | 100000 | 2500 |
| **Collision** | 100000 | 2500 |
| **Towing And Labor** | | |

| **Covered Trailer Number:** | 1 | | | |
|---|---|---|---|---|
| **Town And State Where The Covered Trailer Will Be Principally Garaged:** | | | | |
| Per Schedule on File with Cover Whale Insurance Solutions Inc. | | | | |
| **Covered Auto Description** | | | | |
| **Year:** | 2022 | **Model:** | Dry Van Duraplate | **Trade Name:** | WABASH VANS |
| **Body Type:** | Trailer | | **Serial Number(s):** | |
| **Vehicle Identification Number (VIN):** | 1JJV532D8NL316915 | | | |
| **Classification** | | | | |

| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVWR, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
|---|---|---|---|---|---|---|
| N/A | Unlimited | C | Trailer | N/A | N/A | N/A |

Loss Payee Name and Address: Per Schedule on File with Cover Whale Insurance Solutions Inc.

## Coverages – Premiums, Limits And Deductibles

(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.)

| Coverages | Limit | Deductible |
|---|---|---|
| Covered Autos Liability | NOT COVERED | NOT COVERED |
| Personal Injury Protection | NOT COVERED | NOT COVERED |
| Added Personal Injury Protection | NOT COVERED | NOT COVERED |
| Property Protection Insurance (Michigan Only) | NOT COVERED | NOT COVERED |
| Auto Medical Payments | NOT COVERED | NOT COVERED |
| Medical Expense And Income Loss Benefits (Virginia Only) | NOT COVERED | NOT COVERED |
| Comprehensive | 30000 | 1000 |
| Specified Causes Of Loss | 30000 | 1000 |
| Collision | 30000 | 1000 |
| Towing And Labor | | |

| Covered Trailer Number: | 2 |
|---|---|

| Town And State Where The Covered Trailer Will Be Principally Garaged: |
|---|
| Per Schedule on File with Cover Whale Insurance Solutions Inc. |

| Covered Auto Description | | | | |
|---|---|---|---|---|
| Year: | 2022 | Model: | Dry Van Duraplate | Trade Name: | WABASH VANS |
| Body Type: | Trailer | | | Serial Number(s): | |
| Vehicle Identification Number (VIN): | | 1JJV532D1NL316917 | | | |

Classification

| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVWR, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
|---|---|---|---|---|---|---|
| N/A | Unlimited | C | Trailer | N/A | N/A | N/A |

| Loss Payee Name and Address: Per Schedule on File with Cover Whale Insurance Solutions Inc. |
|---|
| |

| Coverages – Premiums, Limits And Deductibles | | |
|---|---|---|
| (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | |
| **Coverages** | **Limit** | **Deductible** |
| Covered Autos Liability | NOT COVERED | NOT COVERED |
| Personal Injury Protection | NOT COVERED | NOT COVERED |
| Added Personal Injury Protection | NOT COVERED | NOT COVERED |
| Property Protection Insurance (Michigan Only) | NOT COVERED | NOT COVERED |
| Auto Medical Payments | NOT COVERED | NOT COVERED |
| Medical Expense And Income Loss Benefits | NOT COVERED | NOT COVERED |

| (Virginia Only) | | |
|---|---|---|
| Comprehensive | 30000 | 1000 |
| Specified Causes Of Loss | 30000 | 1000 |
| Collision | 30000 | 1000 |
| Towing And Labor | | |

| Covered Trailer Number: | 3 |
|---|---|

**Town And State Where The Covered Trailer Will Be Principally Garaged:**

Per Schedule on File with Cover Whale Insurance Solutions Inc.

| Covered Auto Description | | | | | | |
|---|---|---|---|---|---|---|
| Year: | 2022 | Model: | Dry Van Duraplate | Trade Name: | | WABASH VANS |
| Body Type: | Trailer | | | Serial Number(s): | | |
| Vehicle Identification Number (VIN): | | 1JJV532D1NL316920 | | | | |
| Classification | | | | | | |

| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVWR, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
|---|---|---|---|---|---|---|
| N/A | Unlimited | C | Trailer | N/A | N/A | N/A |

**Loss Payee Name and Address:** Per Schedule on File with Cover Whale Insurance Solutions Inc.

## Coverages – Premiums, Limits And Deductibles

(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.)

| Coverages | Limit | Deductible |
|---|---|---|
| **Covered Autos Liability** | NOT COVERED | NOT COVERED |
| **Personal Injury Protection** | NOT COVERED | NOT COVERED |
| **Added Personal Injury Protection** | NOT COVERED | NOT COVERED |
| **Property Protection Insurance (Michigan Only)** | NOT COVERED | NOT COVERED |
| **Auto Medical Payments** | NOT COVERED | NOT COVERED |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | NOT COVERED | NOT COVERED |
| **Comprehensive** | 30000 | 1000 |
| **Specified Causes Of Loss** | 30000 | 1000 |
| **Collision** | 30000 | 1000 |
| **Towing And Labor** | | |

| Covered Trailer Number: | 4 | | | | | |
|---|---|---|---|---|---|---|
| **Town And State Where The Covered Trailer Will Be Principally Garaged:** | | | | | | |
| Per Schedule on File with Cover Whale Insurance Solutions Inc. | | | | | | |
| **Covered Auto Description** | | | | | | |
| Year: | 2022 | Model: | Dry Van Duraplate | Trade Name: | | WABASH VANS |
| Body Type: | Trailer | | | Serial Number(s): | | |
| Vehicle Identification Number (VIN): | | 1JJV532D3NL316918 | | | | |
| **Classification** | | | | | | |

| Original Cost New | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVWR, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code |
|---|---|---|---|---|---|---|
| N/A | Unlimited | C | Trailer | N/A | N/A | N/A |

| Loss Payee Name and Address: Per Schedule on File with Cover Whale Insurance Solutions Inc. |
|---|
| |

| Coverages – Premiums, Limits And Deductibles | | |
|---|---|---|
| (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | |
| **Coverages** | **Limit** | **Deductible** |
| **Covered Autos Liability** | NOT COVERED | NOT COVERED |
| **Personal Injury Protection** | NOT COVERED | NOT COVERED |
| **Added Personal Injury Protection** | NOT COVERED | NOT COVERED |
| **Property Protection Insurance (Michigan Only)** | NOT COVERED | NOT COVERED |
| **Auto Medical Payments** | NOT COVERED | NOT COVERED |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | NOT COVERED | NOT COVERED |
| **Comprehensive** | 30000 | 1000 |
| **Specified Causes Of Loss** | 30000 | 1000 |
| **Collision** | 30000 | 1000 |
| **Towing And Labor** | | |

4. AUDIT & REPORTING TERMS

| | |
|---|---|
| Auditable policy | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |
| Reporting Period | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |
| Reporting Values | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |
| Audit Due date | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |
| Premium Adjustment Period | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |
| Minimum Audit Premium | N/A – Only Scheduled Vehicles, Trailer and Drivers are covered |

5. **Loss Payee** – Any loss is payable as interest may appear.

6. **TOTAL PREMIUMS** – Premiums subject to reporting and audit provisions.

| Coverage | Rating Factor | Rating Exposure Base | Deposit Premium |
|---|---|---|---|
| Physical Damage - Autos | 7.18% | 200.000 | 14,360.00 |
| Physical Damage - Trailers | 7.18% | 120.000 | 8,616.00 |
| Trailer Interchange | 3% | 0 | 0 |
| Towing And Labor | INCLUDED | 25,000 | 1,300 |
| Estimated Total Premium | | | 24,276.00 |

**Cover Whale**

CW APD DEC SUM 06 22

| Coverage Part | Taxes Fees & Total Cost |
|---|---|
| Automobile Physical Damage | $24,276.00 |
| Policy Fee | $300.00 |
| Safety Fee | $0.00 |
| Broker Fee | 0.00 |
| Surplus Lines Tax | $614.40 |
| Stamping Fee | $0.00 |
| Maintenance Assessment Fee | $0.00 |
| Windstorm Fee (if applicable) | $0.00 |
| SLAS Transaction Fee (if applicable) | 0.00 |
| Fire Marshal Tax (if applicable) | $0.00 |
| **TOTAL** | $25,190.40 |

COMMERCIAL AUTO
CW PD CA 00 20 01 22

# MOTOR CARRIER COVERAGE FORM - APD

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 61 | Any "Auto" | |
| 62 | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the Policy begins. |
| 63 | Owned "Private Passenger Type" "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the Policy begins. |
| 64 | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the Policy begins. |
| 65 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the Policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| 66 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the Policy begins provided they are subject to the same state uninsured motorists requirement. |
| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 68 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |
| 69 | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

© Insurance Services Office, Inc., 2019

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 70 | Your "Trailers" In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol 70 is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |
| 71 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type" "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |
| 79 | "Mobile Equipment" Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **61, 62, 63, 64, 65, 66** or **79** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **67** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a registered Gross Vehicle Weight Rating of 3,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – AUTO LIABILITY COVERAGE INTENTIONALLY DELETED – NO COVERAGE OFFERED.**

**SECTION III – TRAILER INTERCHANGE COVERAGE**

**A. Coverage**

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn

### b. Collision Coverage

Caused by:

(1) The "trailer's" collision with another object; or

(2) The "trailer's" overturn.

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**3. Coverage Extensions**

The following apply as **Supplementary Payments.** We will pay for you:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

**c.** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

**d.** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**e.** All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for loss of use.

**3. Other Exclusions**

We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**C. Limits Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

**1.** The actual cash value of the damaged or stolen property at the time of the "loss";

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

**3.** The Limit Of Insurance shown in the Declarations.

### D. Deductible

For each covered "trailer", our obligation to pay:

1. The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Declarations.

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Declarations.

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance shown in the Declarations.

## SECTION IV – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing, Storage And Labor**

   For any covered "loss", we will pay up to the limit shown in the Declarations for towing, storage and labor costs incurred each time a covered "auto" that is a "private passenger type", light, medium, heavy, or extra heavy tractor or truck is disabled. However, the labor must be performed at the place of disablement.

### B. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

   **a. Transportation Expenses**

   We will also pay up to $30 per day to a maximum of $900 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry Comprehensive Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the Policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

   However, the most we will pay for any expenses for loss of use is $30 per day, to a maximum of $900.

© Insurance Services Office, Inc., 2019

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War Or Military Action**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

   a. Any covered "auto" while in anyone else's possession under a written "trailer" interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

   b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

   c. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   d. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   e. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   f. Any accessories used with the electronic equipment described in Paragraph **e.** above.

3. Exclusions **2.e.** and **2.f.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto";

   b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

   c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   d. Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system.

4. We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   a. "Loss" to any one covered "auto" is the lesser of:

      (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

      (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

      (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

      (2) Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

(3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit of Insurance, provided that:

1. The Comprehensive Coverage deductible applies only to "loss" caused by:

   **a.** Theft or mischief or vandalism; or

   **b.** All perils.

2. Regardless of the number of covered "autos" damaged or stolen, the maximum deductible applicable for all "loss" in any one event caused by:

   **a.** Theft or mischief or vandalism; or

   **b.** All perils,

   will be equal to five times the highest deductible applicable to any one covered "auto" on the Policy for Comprehensive Coverage. The application of the highest deductible used to calculate the maximum deductible will be made regardless of which covered "autos" were damaged or stolen in the "loss".

**SECTION V – MOTOR CARRIER CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

1. **Appraisal For Physical Damage Loss**

   If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss**

   We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:

   **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

   (1) How, when and where the "accident" or "loss" occurred;

   (2) The "insured's" name and address; and

   (3) To the extent possible, the names and addresses of any injured persons and witnesses.

   **b.** Additionally, you and any other involved "insured" must:

   (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

   (4) Authorize us to obtain medical records or other pertinent information.

   (5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

   **c.** If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

   (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

   (2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

   (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

 © Insurance Services Office, Inc., 2019 CW PD CA 00 20 01 22

(4) Agree to examination under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this Policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance – Primary And Excess Insurance Provisions**

**a.** While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

(2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

**b.** While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

(2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

(1) Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a.**, **b.**, **c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**f.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**g.** Regardless of the provisions of Paragraphs **a.**, **b.**, **c.**, **d.** and **e.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**h.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this Policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this Policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the Policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION VI – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in property damage.

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**3.** However, "auto" does not include "mobile equipment".

**C.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**D.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**E.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

© Insurance Services Office, Inc., 2019

F. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for property damage to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

b. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section II, Paragraph A. 1.d. of the Who Is An Insured provision.

G. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

H. "Loss" means direct and accidental loss or damage.

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above, maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

   However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

J. "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

K. "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

L. Suit" means a civil proceeding in which:
1. Damages because of property damage or
2. A "covered expense"

   to which this insurance applies, are alleged. "Suit" includes:
   a. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or
   b. Any other alternative dispute resolution proceeding in which such damages or "covered expenses" are claimed and to which the "insured" submits with our consent.

M. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload conditions.

N. "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

O. "Unmanned aircraft" means an aircraft that is not designed, manufactured; or modified after manufacture; to be controlled directly by a person from within the aircraft.

© Insurance Services Office, Inc., 2019
CW PD CA 00 20 01 22

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

POLICY NUMBER: CW3532551-00

COMMERCIAL AUTO
CA 20 01 11 20

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | TRANSLIDE LLC |
| **Endorsement Effective Date:** | Aug 10, 2023 |

### SCHEDULE

| | | | |
|---|---|---|---|
| **Insurance Company:** Everspan Indemnity Insurance Company | | | |
| **Policy Number:** CW3532551-00 | | **Effective Date:** Aug 10, 2023 | |
| **Expiration Date:** Aug 10, 2024 | | | |
| **Named Insured:** TRANSLIDE LLC | | TRANSLIDE FREIGHT | |
| **Address:** 2439 W 16TH ST | INDIANAPOLIS | IN | 46222 |
| **Additional Insured (Lessor):** | Any entity or individual having a financial interest in Covered Property and holding a current certificate of insurance issued by the producing agent may be considered a Loss Payee as respects their interest in Covered Property. | | |
| **Address:** 2439 W 16TH ST | INDIANAPOLIS | IN | 46222 |
| **Designation Or Description Of "Leased Autos":** Per schedule on file with company | | | |

| Coverages | Limit Of Insurance Or Deductible | |
|---|---|---|
| **Covered Autos Liability** | $ | **Each "Accident"** |
| **Comprehensive** | $ See Declarations | **Deductible For Each Covered "Leased Auto"** |
| **Collision** | $ See Declarations | **Deductible For Each Covered "Leased Auto"** |
| **Specified Causes Of Loss** | $ See Declarations | **Deductible For Each Covered "Leased Auto"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the **Who Is An Insured** provision under **Covered Autos Liability Coverage** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the Policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the Policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

© Insurance Services Office, Inc., 2019 **CA 20 01 11 20**

# UNDECLARED DRIVER EXCLUSION

This endorsement modifies insurance provided under the following:

CW PD CA 00 20        Motor Carrier Coverage Form – APD

1. The following definitions apply to this endorsement:

    a. **Undeclared driver** means any driver not listed on the Driver Schedule.

2. The following condition is added to the policy:

    It is a condition of the policy that you declare all drivers to the company at or before the inception date of the policy or immediately upon hire.

    Failure to immediately declare the driver will result in the denial of coverage for a loss to a covered vehicle which they are driving or operating or is under their care, custody or control.

3. The following exclusion is added to the policy:

    This insurance does not apply to any loss involving a covered vehicle while being driven or operated by or under the care, custody or control of any undeclared driver.

All other policy terms and conditions remain unchanged.

**CW CA 402 11 20**

POLICY NUMBER: CW3532551-00

**COMMERCIAL AUTO**
**CA 04 22 11 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

| | |
|---|---|
| **Named Insured:** TRANSLIDE LLC | TRANSLIDE FREIGHT |
| **Endorsement Effective Date:** Aug 10, 2023 | |

### SCHEDULE

| |
|---|
| **Number Of Days' Notice:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in Paragraph **2.** of either the Cancellation Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

COMMERCIAL AUTO
CA 23 84 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

**b.** When one or both of the following apply:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

  **a.** Physical injury that involves a substantial risk of death; or

  **b.** Protracted and obvious physical disfigurement; or

  **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.**, coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08 ☐

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

# State Fraud Warnings

| State | Fraud Warning |
|-------|---------------|
| AK | A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law. |
| AL | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof. |
| AR | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| AZ | For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties |
| CA | For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| CO | It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies. |

| State | Fraud Warning |
|-------|---------------|
| DC | WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| DE | Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony. |
| FL | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| ID | Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony. |
| IN | A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony. |
| KY | Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| LA | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| MD | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

| State | Fraud Warning |
|-------|---------------|
| ME | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. |
| MN | A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. |
| NH | Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20. |
| NJ | Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. |
| NM | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |
| NY | Commercial insurance warning:<br>Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br>Automobile insurance warning:<br>Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br>General fraud warning:<br>Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits |

| State | Fraud Warning |
|-------|---------------|
|  | a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| OH | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| OK | WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| OR | Any person who knowingly and with intent to defraud an insurance company files a claim containing any materially false information may be subject to prosecution for insurance fraud. |
| PA | General fraud warning:<br>Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br>Motor vehicle insurance fraud warning:<br>Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000. |
| RI | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinements in prison. |
| TN | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |

| State | Fraud Warning |
|-------|---------------|
| VA | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| WA | It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits. |
| WV | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

NON-OWNED TRAILER ENDORSMENT
CWISNOT1 (12/21)

# NON-OWNED TRAILER ENDORSEMENT

Policy No: CW3532551-00

Effective Date: Aug 10, 2023

Named Insured: TRANSLIDE LLC

| Any One Trailer Limit: |
| --- |
| Deductible: |

If a limit of insurance for non-owned **trailers** is shown on the schedule made a part of the policy issued to **you** we will pay for **loss** by a Covered Cause of **Loss** to a **trailer** that:

    a.  **You** do not own, but that is in **your** care, custody and control (not exceeding 90 days);

    b.  Is attached to a tractor scheduled on the policy issued to **you** at the time of **loss**; and

    c.  **You** have agreed to be responsible for while in your possession.

This endorsement does not provide coverage for any **trailer** that is in **your** care, custody, or control, subject to a written interchange agreement.

This endorsement does not provide coverage for any **trailer** that is in **your** care, custody and control that is being transported as cargo, whether attached to a tractor scheduled on the policy or not.

**Our** liability under this endorsement is subject to all of the provisions, exclusions, definitions, terms and conditions contained in the policy, and will further exclude loss of or damage to any **trailer** occurring while the **trailer** is not attached to a **covered vehicle**. **We** will pay the actual cash value of the damaged **trailer**, or the limit of liability shown above under Any One Trailer, whichever is less.

The amount shown above under Deductible will be deducted separately from each claim of damage to any one **trailer**.

In the event of **loss** to a **trailer** insured under this endorsement, **we** will have the right to adjust the claim with the owner(s) of the **trailer** and the settlement of the **loss** with the owner(s) will satisfy any claim of **yours** for damage to that **trailer.**

All other policy terms and conditions remain unchanged.

## SURPLUS LINES DISCLOSURE

| Diligent Search Affidavit | Your licensed insurance broker declared that they made a thorough and diligent effort to procure the insurance coverage described above from licensed insurers which are authorized to transact the kind of insurance involved and which provide, in the usual course of business, coverage comparable to the coverage being sought and have been unable to procure said insurance.<br><br>Your licensed insurance broker have documented a declination of coverage from at least three admitted insurers. They further declare that at the time of presenting a quotation to the insured, the insured was given notice in writing, either directly or through the producer, that the insurer with whom the insurance is to be placed is not admitted to transact business in this State and is subject to limited regulation by the Department of Insurance; and in the event of the insolvency of the insurer, losses will not be paid by any Insurance Guaranty Association or fund.<br><br>We provide this insurance based on the producer acknowledging they have attempted to procure an authorized/admitted insurer quote. |
|---|---|
| Alabama | This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law. |
| Alaska | ALASKA POLICY HOLDER NOTICE 3 AAC 25.050 This policy is issued by a nonadmitted or surplus lines insurer. Insurance may only be purchased from nonadmitted insurers if the full amount, kind, or class of insurance cannot be obtained from insurers who are admitted to do business in the State of Alaska. Your broker or the surplus lines broker has determined that this was true on the date the policy was placed. Before issuing a renewal policy or extending this policy, remarketing is required. To avoid intentional or unintentional extension of coverage in the surplus lines market when an admitted market for that coverage exists, a nonadmitted insurer is prohibited from the automatic renewal or extension of a policy without remarketing by your broker or the surplus lines broker. In order to comply with the Alaska Administrative Code, the following notice is given: You are hereby notified that, under 3 AAC 25.050, your policy will terminate effective no later than the date and time of its expiration. We reserve the right to cancel this policy sooner than the expiration date by giving you notice of cancellation as required in AS 21.36.220. You may request through your broker that a new policy from the surplus lines broker be concurrent with the effective date of the termination of this policy. You are also notified that a new policy, if issued by us, is subject to rerating, which may result in a premium increase of more than ten percent (10%). As required by 3 AAC 25.050, you are hereby notified that any subsequent policy issued by us may be subject to a ten percent (10%) or more increase in premium. The actual premium will be based upon rates that apply at the time a subsequent policy, if any, is issued and will be made available to you before the effective date of the new policy, or the date subsequent coverage is bound, whichever occurs first. |
| Arizona | Any policy and any evidence of surplus lines coverage that is issued by an unauthorized insurer and that is issued for delivery to the insured must contain a conspicuously stamped or written notice in bold faced type that states one of the following: "**1. The surplus lines policy or evidence of coverage is issued by a surplus lines insurer that is not a domestic surplus lines insurer: Pursuant to** |

|  | section 20-401.01, subsection B, paragraph 1, Arizona Revised Statutes, this policy is issued by an insurer that does not possess a certificate of authority from the director of the Arizona Department of Insurance. If the insurer that issued this policy becomes insolvent, insureds or claimants will not be eligible for insurance guaranty fund protection pursuant to title 20, Arizona Revised Statutes. 2. The surplus lines policy or evidence of coverage is issued by a domestic surplus lines insurer: if the insurer that issued this policy becomes insolvent, insureds or claimants will not be eligible for insurance guaranty fund protection pursuant to title 20, Arizona Revised Statutes. |
|---|---|
| Arkansas | This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances, be more or less favorable to an insured than a contract from an admitted carrier might be. The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract. A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums. |
| California | IMPORTANT NOTICE: 1. THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS. 2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS. 3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED. 4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE TOLL-FREE NUMBER 1-800-927-4357 OR INTERNET WEBSITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NONUNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO VISIT THE NAIC'S INTERNET WEBSITE AT WWW.NAIC.ORG. THE NAIC—THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS—IS THE REGULATORY SUPPORT ORGANIZATION CREATED AND GOVERNED BY THE CHIEF INSURANCE REGULATORS IN THE UNITED STATES. 5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER. YOU CAN FIND A LINK TO EACH STATE FROM THIS NAIC INTERNET WEBSITE: HTTPS://NAIC.ORG/STATE_WEB_MAP.H TM. 6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NONUNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION |

| | |
|---|---|
| | ABOUT THAT INSURER. 7. CALIFORNIA MAINTAINS A "LIST OF APPROVED SURPLUS LINE INSURERS (LASLI)." ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEBSITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV/01- CONSUMERS/120-COMPANY/07-LASLI/LASLI.CFM. 8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE EFFECTIVE IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO LAPSE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU. |
| Colorado | This contract is delivered as surplus line coverage under the Nonadmitted Insurance Act. The insurer issuing this contract is not licensed in Colorado but is an eligible nonadmitted insurer. There is no protection under the provisions of the Colorado Insurance Guaranty Association Act. |
| Connecticut | NOTICE THIS IS A SURPLUS LINES POLICY AND IS NOT PROTECTED BY THE CONNECTICUT INSURANCE GUARANTY ASSOCIATION OR SUBJECT TO REVIEW BY THE CONNECTICUT INSURANCE DEPARTMENT. IT IS IMPORTANT THAT YOU READ AND UNDERSTAND THIS POLICY. |
| Delaware | This insurance contract is issued pursuant to the Delaware Insurance Laws by an insurer neither licensed by nor under the jurisdiction of the Delaware Insurance Department. This insurer does not participate in insurance guaranty funds created by state law. In the event of the insolvency of the surplus lines insurer, losses will not be paid by the state insurance guaranty fund. |
| Dist Columbia | DC insurance statutes and regulations do not address disclosure requirements in surplus lines policies. However, under the Unfair Trade Act (the "Act"), a notice should be provided or the company could be in violation of the Act |
| Florida | THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER. |
| Georgia | This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law, O.C.G.A. Chapter 33-5. |
| Hawaii | This insurance contract is issued by an insurer which is not licensed by the State of Hawaii and is not subject to its regulation or examination. If the insurer is found insolvent, claims under this contract are not covered by any guaranty fund of the State of Hawaii. |
| Idaho | THIS SURPLUS LINES CONTRACT IS ISSUED PURSUANT TO THE IDAHO |

| | INSURANCE LAWS BY AN INSURER NOT LICENSED BY THE IDAHO DEPARTMENT OF INSURANCE. THERE IS NO COVERAGE PROVIDED FOR SURPLUS LINE INSURANCE BY EITHER THE IDAHO INSURANCE GUARANTY ASSOCIATION OR BY THE IDAHO LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION. |
|---|---|
| Illinois | Notice to Policyholder: This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund |
| Indiana | This insurance contract is issued by an insurer which is not licensed by the State of Indiana and is not subject to its regulation or examination. If the insurer is found insolvent, claims under this contract are not covered by any guaranty fund. |
| Iowa | This policy is issued, pursuant to Iowa Code section 515.120, by a nonadmitted company in Iowa and as such is not covered by the Iowa Insurance Guaranty Association. |
| Kansas | This policy is issued by an insurer not authorized to do business in Kansas and, as such, the form, financial condition and rates are not subject to review by the Commissioner of insurance and the insured is not protected by any guaranty fund. |
| Kentucky | This insurance has been placed with an insurer not licensed to transact business in the Commonwealth of Kentucky but eligible as a surplus lines insurer. The insurer is not a member of the Kentucky Insurance Guaranty Association. Should the insurer become insolvent, the protection and benefits of the Kentucky Insurance Guaranty Association are not available. |
| Louisiana | NOTICE This insurance policy is delivered as surplus line coverage under the Louisiana Insurance Code. In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association or the Louisiana Life and Health Insurance Guaranty Association, which guarantees only specific types of policies issued by insurance companies authorized to do business in Louisiana. This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker: |
| Maine | This insurance contract is issued pursuant to the Maine Insurance Laws by an insurer neither licensed by nor under the jurisdiction of the Maine Bureau of Insurance. |
| Maryland | This insurance is issued by a nonadmitted insurer not under the jurisdiction of the Maryland Insurance Commissioner"; and (b) accompanied by a written disclosure, as prescribed by the commissioner of insurance, that the insurer does not possess a certificate of authority from the commissioner of insurance to engage in the insurance business in Maryland. |
| Massachusetts | Assured must sign affidavit (Form BR-7), which must also be signed by broker, stating that he was informed by his insurance broker that the type and amount of insurance could be obtained from insurer's not admitted in Massachusetts and that: the surplus lines insurer with whom the insurance was placed is not licensed in Massachusetts and is not subject to Massachusetts regulations; and in the event of the insolvency of the surplus lines insurer, losses will not be paid by |

| | the state insurance guaranty fund. |
|---|---|
| Michigan | This insurance has been placed with an insurer that is not licensed by the state of Michigan. In case of insolvency, payment of claims may not be guaranteed |
| Minnesota | THIS INSURANCE IS ISSUED PURSUANT TO THE MINNESOTA SURPLUS LINES INSURANCE ACT. THE INSURER IS AN ELIGIBLE SURPLUS LINES INSURER BUT IS NOT OTHERWISE LICENSED BY THE STATE OF MINNESOTA. IN CASE OF INSOLVENCY, PAYMENT OF CLAIMS IS NOT GUARANTEED.<br>Minn. Stat. Ann § 60A. 209 requires that the above notice be stamped in red ink on policies that are procured with ineligible surplus lines insurers |
| Mississippi | NOTE: This insurance policy is issued pursuant to Mississippi law covering surplus lines insurance. The company issuing the policy is not licensed by the State of Mississippi, but is authorized to do business in Mississippi as a nonadmitted company. The policy is not protected by the Mississippi Insurance Guaranty Association in the event of the insurer's insolvency. |
| Missouri | This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the state of Missouri and is not subject to its supervision. |
| Montana | § 33-2-321 of the Montana Insurance Code,<br>issued in an unauthorized insurer under The Surplus Lines Insurance Law, under surplus lines insurance producer's license No. …..” and “NOT covered by the property and casualty guaranty fund of this state if the unauthorized insurer becomes insolvent. |
| Nebraska | This policy is issued by a nonadmitted insurer, and in the event of the insolvency of such insurer, this policy will not be covered by the Nebraska Property and Liability Insurance Guaranty Association. |
| Nevada | This insurance contract is issued pursuant to the Nevada insurance laws by an insurer neither licensed by nor under the supervision of the Division of Insurance of the Department of Business and Industry of the State of Nevada. If the insurer is found insolvent, a claim under this contract is not covered by the Nevada Insurance Guaranty Association Act. |
| New Hampshire | The company issuing this policy has not been licensed by the state of New Hampshire and the rates charged have not been approved by the commissioner of insurance. If the company issuing this policy becomes insolvent, the New Hampshire insurance guaranty fund shall not be liable for any claims made against the policy. |
| New Jersey | This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance |

| | |
|---|---|
| | covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund. |
| New Mexico | This policy provides surplus lines insurance by an insurer not otherwise authorized to transact business in New Mexico. This policy is not subject to supervision, review or approval by the superintendent of insurance. The insurance so provided is not within the protection of any guaranty fund law of New Mexico designed to protect the public in the event of the insurer's insolvency. |
| New York | THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS. |
| North Carolina | The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund. |
| North Dakota | Notice: 1. an insurer that is not licensed in this state is issuing the insurance policy that you have applied to purchase. These companies are called "nonadmitted" or "surplus lines" insurers. 2. The insurer is not subject to the financial solvency regulation and enforcement that applies to licensed insurers in this state. 3. These insurers generally do not participate in insurance guaranty funds created by state law. These guaranty funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised. 4. Some states maintain lists of approved or eligible surplus lines insurers and surplus lines producers may use only insurers on the lists. Some states issue orders that particular surplus lines insurers cannot be used. 5. For additional information about the above matters and about the insurer, you should ask questions of your insurance producer or surplus lines producer. You may also contact your insurance department consumer help line. |
| Ohio | THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NONLICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION. |
| Oklahoma | Insurance contracts procured as surplus lines coverage are not subject to the protection of any guaranty association in the event of liquidation or receivership of the insurer.<br><br>Insurance may not be procured from unauthorized insurers in Oklahoma unless the interest of the insured cannot be procured from authorized insurers after direct inquiry to such insurers by a licensed surplus lines broker. |
| Oregon | This insurance was procured and developed under the Oregon surplus lines laws. It is NOT covered by the provisions of ORS 734.510 to 734.710 relating to the Oregon Insurance Guaranty Association. If the insurer issuing this insurance becomes insolvent, the Oregon Insurance Guaranty Association has no obligation to pay claims under this insurance. |

| Pennsylvania | The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association." |
| --- | --- |
| Puerto Rico | All or a number of the insurers participating in this insurance have not been authorized to transact business in Puerto Rico nor approved as surplus line insurers by the Commissioner of Insurance of this Commonwealth. The transaction of this insurance by a licensed surplus line insurance broker shall not be construed to mean that the Commissioner of Insurance of Puerto Rico approves of such insurer. |
| Rhode Island | NOTICE THIS INSURANCE CONTRACT HAS BEEN PLACED WITH AN INSURER NOT LICENSED TO DO BUSINESS IN THE STATE OF RHODE ISLAND BUT APPROVED AS A SURPLUS LINES INSURER. THE INSURER IS NOT A MEMBER OF THE RHODE ISLAND INSURERS INSOLVENCY FUND. SHOULD THE INSURER BECOME INSOLVENT, THE PROTECTION AND BENEFITS OF THE RHODE ISLAND INSURERS INSOLVENCY FUND ARE NOT AVAILABLE. |
| South Carolina | This company has been approved by the director or his designee of the South Carolina Department of Insurance to write business in this State as an eligible surplus lines insurer, but it is not afforded guaranty fund protection. |
| South Dakota | THIS INSURANCE CONTRACT IS ISSUED BY A NON-ADMITTED INSURER WHICH IS NOT LICENSED BY NOR UNDER THE JURISDICTION OF THE SOUTH DAKOTA INSURANCE DIRECTOR |
| Tennessee | This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes. |
| Texas | This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85% percent tax on gross premium. |
| Utah | The insurer issuing this policy does not hold a certificate of authority to do business in this state and thus is not fully subject to regulation by the Utah insurance commissioner. This policy receives no protection from any of the guaranty associations created under Title 31A, Chapter 28. |
| Vermont | The company issuing this policy has not been licensed by the state of Vermont and the rates charged have not been approved by the commissioner of insurance. Any default on the part of the insurer is not covered by the Vermont Insurance Guaranty Association. |
| Virginia | The policy is being procured from or has been placed with an insurer approved by the Commission for issuance of surplus lines insurance in this Commonwealth, but not licensed or regulated by the Commission and that there is no protection under the Virginia Property and Casualty Insurance Guaranty Association against financial |

| | loss to claimants or policyholders because of the insolvency of an unlicensed insurer. |
|---|---|
| Washington | This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, Title 48RCW. It is not protected by any Washington state guaranty association law. |
| West Virginia | Notice: 1. An insurer that is not licensed in this state is issuing the insurance policy that you have applied to purchase. These companies are called "nonadmitted" or "surplus lines" insurers. 2. The insurer is not subject to the financial solvency regulation and enforcement that applies to licensed insurers in this state. 3. These insurers generally do not participate in insurance guaranty funds created by state law. These guaranty funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised. 4. Some states maintain lists of approved or eligible surplus lines insurers and surplus lines brokers may use only insurers on the lists. Some states issue orders that particular surplus lines insurers cannot be used. 5. For additional information about the above matters and about the insurer, you should ask questions of your insurance agent or surplus lines licensee. You may also contact your insurance commission consumer help line.<br><br>THIS COMPANY IS NOT LICENSED TO DO BUSINESS IN WEST VIRGINIA AND IS NOT SUBJECT TO THE WEST VIRGINIA INSURANCE GUARANTY ACT. |
| Wisconsin | This insurance contract is with an insurer which has not obtained a certificate of authority to transact regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to s. 618.41 of the Wisconsin Statutes. Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3% tax on gross premium. |
| Wyoming | This insurance contract is issued pursuant to the Wyoming Insurance Laws by an insurer neither licensed by nor under the jurisdiction of the Wyoming Insurance Department. In the event of insolvency of the surplus lines insurer, losses will not be paid by the Wyoming Insurance Guaranty Association." (W.S. § 26-11-109(a) |



# NOTICE:
# CLAIM REPORTING INSTRUCTIONS

In the event of a claim: losses should be immediately reported by the insured or agent via email.

**Email for New Claims:**

AUSLtdAdmin@us.davies-group.com

-or-

**For Assistance by Phone, Please Call:**

(888) 767-6897
(888) 271-2119
(512) 806-1413
(877) 467-1757

Please be sure to state the policy number and named insured to assist in prompt handling of the claim.

**Your Policy Number:** CW3532551-00

**In addition: in the event of a Comprehensive or Collision Claim:**

- If your truck, tractor or trailer are currently incurring storage fees, it is your duty to mitigate the loss and move the unit(s) to a storage fee-free facility.

- Do not remove or repair any parts from the unit(s).

Exhibit C

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 10/12/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: JUSTIN WILSON |
|---|---|
| Wilson Insurance & Investment Group<br>2300 Valleyview LN. Ste 626<br>Irving, TX 75062 | PHONE (A/C, No, Ext): (972)224-0113    FAX (A/C, No): 214-452-1997<br>E-MAIL ADDRESS: coirequest@mrwilsoninsurance.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: Everspan Indemnity Insurance | 16882 |
| TRANSLIDE LLC<br>2439 W 16TH ST<br>INDIANAPOLIS, IN 46222 | INSURER B: Canopius US Insurance | 524210 |
| | INSURER C: Trisura Specialty Insurance | 16188 |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | CW1EII-461768-01 | 08/10/2023 | 08/10/2024 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 CSL |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☒ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | MT-CARGO | | | CUS09180077 | 08/10/2023 | 08/10/2024 | DED $1000 | $100,000 |
| C | PHYSICAL DAMAGE | | | CW3532551-00 | 08/10/2023 | 08/10/2024 | DED $1000/$2500 | STATED VALUE |
| B | TRAILER INTERCHANGE | | | CUS09180077 | 08/10/2023 | 08/10/2024 | DED $1000 | $50,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

PLEASE CONTACT OUR OFFICE AT 972-224-0113 FOR VERFICATION.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| LOSS PAYEE<br>Super Ego Holding LLC<br>677 N LARCH AVE<br>ELMHURST, IL 60126 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>TJJ |

© 1988-2016 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

Printed by TJJ on October 18, 2023 at 08:20AM

AGENCY CUSTOMER ID: 00005686

LOC #

# ACORD®

## ADDITIONAL REMARKS SCHEDULE

Page ___ of ___

| AGENCY | NAMED INSURED |
|---|---|
| Wilson Insurance & Investment Group | TRANSLIDE LLC |
| POLICY NUMBER | 2439 W 16TH ST |
| CW1EII-461768-01 | INDIANAPOLIS, IN 46222 |
| CARRIER  NAIC CODE | EFFECTIVE DATE 08/10/2023 |
| COVER WHALE | |

ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

| FORM NUMBER: | FORM TITLE |
|---|---|

2021 FREIGHTLINER/CASCADIA 3AKJHHDR8MSMY0195 - STATED VALUE $100,000
2022 FREIGHTLINER/CASCADIA 3AKJHHDR6NSMY5932 - STATED VALUE $100,000
2022 WABASH 1JJV532D8NL316915 - STATED VALUE $30,000
2022 WABASH 1JJV532D1NL316917 - STATED VALUE $30,000
2022 WABASH 1JJV532D1NL316920 - STATED VALUE $30,000
2016 VANGUARD 5V8VC5327GM603938 - STATED VALUE $30,000

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

Printed by TJJ on October 18, 2023 at 08:20AM

Exhibit D



**Texas Department of Transportation**

125 EAST 11TH STREET, AUSTIN, TEXAS 78701-2483 | WWW.TXDOT.GOV

Wed, 13 December 2023

STATE OF TEXAS        §

This is to certify that I, Jim Markham, am employed by the Texas Department of Transportation (Department); that I am the Custodian of Motor Vehicle Crash Records for such Department; that the attached is a true and correct copy of the peace officer's report filed with the Department referred to in the attached request with the crash date of Tue, 15 August 2023, which occurred in Wharton County; that the investigations of motor vehicle crashes by peace officers are authorized by law; that this Texas Peace Officer's Crash Report is required by law to be completed and filed with this Department; that this report sets forth matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

Jim Markham
Director, Crash Data & Analysis Section
Traffic Safety Division
125 East 11th Street
Austin, TX  78701-2483



OUR VALUES: *People • Accountability • Trust • Honesty*
OUR MISSION: *Connecting You With Texas*

An Equal Opportunity Employer

FATAL ☒CMV ☐SCHOOL BUS ☐RAILROAD ☐ACTIVE SCHOOL ZONE | Unils: 2 | Pers: 2 | Crash ID /202339722...

## Texas Peace Officer's Crash Report (Form CR-3 4/1/2023)

Refer to the attached code sheet for numbered fields
Questions? Call 844/274-7457
*=These fields are required on all additional sheets submitted for this crash (ex additional vehicles, occupants, injured, etc.)
Page 1 of

| *Crash Date (MM/DD/YYYY) | *Crash Time (24HRMM) | Case ID | Local Use |
|---|---|---|---|
| 0 8 / 1 5 / 2 0 2 3 | 1 6 : 1 0 | 4596279 | |

| *County Name WHARTON | *City Name | ☒ Outside City Limit |
|---|---|---|

| In your opinion, did this crash result in at least $1000 damage to any one person's property? | ☒ Yes ☐ No | Latitude (decimal degrees) 2 9 . 3 9 8 4 0 | Longitude (decimal degrees) 0 9 6 . 0 7 0 1 0 |
|---|---|---|---|

### ROAD ON WHICH CRASH OCCURRED

| *1 Rdwy Sys. US | *Hwy. Num. 59 | 2 Rdwy Part 1 | Block Num. | 3 Street Prefix | *Street Name | 4 Street Suffix |
|---|---|---|---|---|---|---|

| ☐ Private Drive or Road, Private Property, Parking Lot | 3 Dir. of Traffic N | ☐ Toll Road/ Toll Lane | Speed Limit 75 | Const. ☐ Yes Zone ☒ No | Workers ☐ Yes Present ☒ No | Secondary ☐ Yes Crash ☒ No | Street Desc. |
|---|---|---|---|---|---|---|---|

### INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER

| At Int. ☐ Yes ☒ No | 1 Rdwy Sys. FM | Hwy. Num. 1161 | 2 Rdwy Part 1 | Block Num | 3 Street Prefix | Street Name FM 1161 | 4 Street Suffix |
|---|---|---|---|---|---|---|---|

| Distance from Int. or Ref. Marker 0.1 | ☐ FT ☒ MI | 3 Dir. from Int. or Ref. Marker N | Ref. Marker | Speed Limit | Street Desc | RRX Num. |
|---|---|---|---|---|---|---|

| Unit Num 1 | 5 Unit Desc 1 | ☐ Parked Vehicle | ☐ Hit and Run | LP State IN | LP Num 3357076 | VIN 3 A K J H H D R 8 M S M Y 0 1 9 |
|---|---|---|---|---|---|---|

| Veh Year 2 0 2 1 | 6 Veh Color SIL | Veh Make FREIGHTLINER | Veh Model CONVENTIONAL | 7 Body Style TT |
|---|---|---|---|---|

| ☐ Responder Struck (Explain in Narrative if checked) | 8 Autonomous Unit NO | 9 Autonomous Level Engaged NO AUTOMATION | ☐ Police, Fire, EMS on Emergenc (Explain in Narrative if checked |
|---|---|---|---|

| 10 DL/ID Type 2 | DL/ID State FL | DL/ID Num V236200720080 | 11 DL Class 98 | 12 CDL End 96 | 13 DL Rest 98 | DOB (MM/DD/YYYY) 0 1 / 0 8 / 1 9 7 |
|---|---|---|---|---|---|---|

Address (Street, City, State, ZIP) 5457 HAVERFORD WAY LAKE WORTH 33463

| Person Num | 14 Pren. Type | 15 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 16 Injury Severity | Age | 17 Ethnicity | 18 Sex | 19 Eject | 20 Restr | 21 Airbag | 22 Helmet | 23 Sol | 24 Alc Spec | Alc Result | 25 Drug Spec | 26 Drug Result | 27 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | VICTOR, EMANUS | C | 51 | B | 1 | 1 | 1 | 1 | 97 | N | 96 | | 96 | 97 | 5 |

Not Applicable - Alcohol and Drug Results are only reporte for Driver/Primary Person for each Unit.

| ☒ Owner ☐ Lessee | Owner/Lessee Name & Address TRANSLIDE LLC, 2439 W. 16TH STREET INDIANAPOLIS, IN 46222 |
|---|---|

| Proof of Fin. Resp. ☒ Yes ☐ No | ☐ Expired ☐ Exempt | 28 Fin. Resp. Type 1 | Fin Resp Name PROGRESSIVE SOUTHEASTERN INSURANCE CO. | Fin Resp Num 960529992 |
|---|---|---|---|---|

| Fin. Resp. Phone Num. 972-224-0113 | 29 Vehicle Damage Rating 1 | 3 . R 4 T 4 | 29 Vehicle Damage Rating 2 | . | Vehicle Inventoried ☐ Ye ☒ No |
|---|---|---|---|---|---|

| Towed By BUENTELLO WRECKER (281-330-7147) | Towed To 341 CR 227, EAST BERNARD, TX 77435 |
|---|---|

| Unit Num 2 | 5 Unit Desc 6 | ☐ Parked Vehicle | ☐ Hit and Run | LP State IL | LP Num 8833295T | VIN 5 V 8 V C 5 3 2 7 G M 6 0 3 9 3 8 |
|---|---|---|---|---|---|---|

| Veh Year 2 0 1 6 | 6 Veh Color WHI | Veh Make VANGUARD NATIONAL TRAILER CORP | Veh Model NOT APPLICABLE | 7 Body Style TL |
|---|---|---|---|---|

| ☐ Responder Struck (Explain in Narrative if checked) | 8 Autonomous Unit NO | 9 Autonomous Level Engaged NO AUTOMATION | ☐ Police, Fire, EMS on Emergenc (Explain in Narrative if checked |
|---|---|---|---|

| 10 DL/ID Type | DL/ID State | DL/ID Num | 11 DL Class | 12 CDL End | 13 DL Rest | DOB (MM/DD/YYYY) |
|---|---|---|---|---|---|---|

Address (Street, City, State, ZIP)

| Person Num | 14 Pren. Type | 15 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 16 Injury Severity | Age | 17 Ethnicity | 18 Sex | 19 Eject | 20 Restr | 21 Airbag | 22 Helmet | 23 Sol | 24 Alc Spec | Alc Result | 25 Drug Spec | 26 Drug Result | 27 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |

Not Applicable - Alcohol and Drug Results are only reporte for Driver/Primary Person for each Unit.

| ☒ Owner ☐ Lessee | Owner/Lessee Name & Address EGO EXPRESS INC., 1517 N. DEE ROAD PARK RIDGE, IL 60068 |
|---|---|

| Proof of Fin. Resp. ☒ Yes ☐ No | ☐ Expired ☐ Exempt | 28 Fin. Resp. Type 1 | Fin Resp Name PROGRESSIVE SOUTHEASTERN INSURANCE CO. | Fin Resp Num 960529992 |
|---|---|---|---|---|

| Fin. Resp. Phone Num. 9722240113 | 29 Vehicle Damage Rating 1 | 3 . R & T 5 | 29 Vehicle Damage Rating 2 | . | Vehicle Inventoried ☐ Ye ☒ No |
|---|---|---|---|---|---|

| Towed | Towed |
|---|---|

rm CR-3    (Rev. 4/1/2023)

| | Unit Num. | Prsn Num | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HRMM) |
|---|---|---|---|---|---|---|
| INJURED/KILLED | 1 | 1 | OAK BEND HOSPITAL - WHARTON | DPS | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Unit Num. | Prsn Num | Charge | Citation/Reference Num. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Damaged Property Other Than Vehicles | Owner's Name | Owners Address |
|---|---|---|
| | | |
| | | |

| Unit Num. 1 | [X] 10,001+ LBS. | [ ] Transporting Hazardous Material | [ ] 9+ Capacity | CMV Disabling Damage? [X] Yes [ ] No | 30 Veh Oper 1 | 31 Carrier ID Type 1 | Carrier ID Num 03922496 | |
|---|---|---|---|---|---|---|---|---|

Carrier's Corp. Name TRANSLIDE LLC

Carrier's Primary Addr. 2439 W. 16TH STREET   INDIANAPOLIS, IN 46222

| 33 Bus Type 0 | [ ] RGVW [X] GVWR | 8 0 0 0 0 | HazMat Released [ ] Yes [ ] No | 34 HazMat Class Num | HazMat ID Num | | 34 HazMat Class Num. | HazMat ID Num. | 32 Veh Type 7 |
|---|---|---|---|---|---|---|---|---|---|

35 Cargo Body Type 3

| Unit Num. 2 | [ ] RGVW [X] GVWR | 8 0 0 0 0 | 36 Trlr Type 2 | CMV Disabling Damage? [ ] Yes [X] No | Unit Num. | [ ] RGVW [ ] GVWR | 36 Trlr Type | CMV Disabling Damage? [ ] Yes [ ] No |
|---|---|---|---|---|---|---|---|---|

| Sequence Of Events | 37 Seq. 1 | 1 | 37 Seq. 2 | 3 | 37 Seq. 3 | 37 Seq. 4 | Intermodal Shipping Container Permit [ ] Yes [X] No | Actual Gross Weight | Total Num. Axles |
|---|---|---|---|---|---|---|---|---|---|

| CONDITIONS | 38 Contributing Factors (Investigator's Opinion) | | 39 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # | Contributing | May Have Contrib | Contributing | May Have Contrib | 40 Weather Cond. | 41 Light Cond. | 42 Entering Roads | 43 Roadway Type | 44 Roadway Alignment | 45 Surface Condition | 46 Traffic Control |
| 1 | | 41 | | | 1 | 1 | 97 | 3 | 1 | 1 | 17 |

**Investigator's Narrative Opinion of What Happened**
(Attach Additional Sheets if Necessary)

U1 was traveling north on US 59 towing U2 in the inside lane. U1 took evasive action to avoid another truck tractor changing lanes (according to the driver of U1) from the outside lane. U1 and U2 entered an unoccupied construction area in the wide median between the north and southbound lanes and rolled over onto the right and top. The driver of U1 stated that the other non-contact unit continued driving without stopping. The driver of U1 said the other vehicle was a truck tractor with a trailer but didn't have any other information about it. - The driver of U1 refused EMS treatment on scene but after a couple hours asked that DPS would drop him off at the local hospital to be checked out.

Indicate North

Field Diagram - Not to Scale



| Date Notified (MM/DD/YYYY) | 0 8 / 1 5 / 2 0 2 3 | Time Notified (24HRMM) | 1 6 2 0 | How Notified | DPS HOUSTON |
|---|---|---|---|---|---|
| Date Arrived (MM/DD/YYYY) | 0 8 / 1 5 / 2 0 2 3 | Time Arrived (24HRMM) | 1 6 4 | Report Date (MM/DD/YYYY) | 0 8 / 1 7 / 2 0 2 3 |
| Date Roadway Cleared (MM/DD/YYYY) | 0 8 / 1 5 / 2 0 2 3 | Time Roadway Cleared (24HRMM) | 1 6 1 0 | Date Scene Cleared (MM/DD/YYYY) 0 8 / 1 5 / 2 0 2 3 | Time Scene Cleared (24HRMM) 2 0 0 0 |

| Investigation Complete [X] Yes [ ] No | Investigator Name (Printed) TAFT, GLEN | ID Num 12658 |
|---|---|---|

ORI

Service/

FATAL ☒ CMV ☐ SCHOOL BUS ☐ RAILROAD ☐ MAB ☐ SUPPLEMENT ☐ ZONE  Units 1 3 Prsns 1 3  Crash ID /202339722

## Texas Peace Officer's Crash Report (Form CR-3 4/1/2023)

Refer to the attached code sheet for numbered fields

Questions? Call 844/274-7457

*=These fields are required on all additional sheets submitted for this crash (ex : additional vehicles, occupants, injured, etc )

Page 3 of

| *Crash Date (MM/DD/YYYY) 0 8 / 1 5 / 2 0 2 3 | *Crash Time (24HRMM) 1 6 1 0 | Case ID 4596279 | | Local Use |
|---|---|---|---|---|

| *County Name WHARTON | *City Name | | ☒ Outside City Lim |
|---|---|---|---|

| In your opinion, did this crash result in at least $1000 damage to any one person's property? ☒ Yes ☐ No | Latitude (decimal degrees) 2 9 * 3 9 ' 8 4 0 | Longitude — (decimal degrees) 0 9 6 * 0 7 0 1 0 |
|---|---|---|

### ROAD ON WHICH CRASH OCCURRED

| *1 Rdwy. Sys. US | *Hwy. Num. 59 | 2 Rdwy. Part 1 | Block Num. | 3 Street Prefix | * Street Name | 4 Street Suffix |
|---|---|---|---|---|---|---|

| ☐ Private Drive or Road, Private Property, Parking Lot | 3 Dir of Traffic N | ☐ Toll Road/ Toll Lane | Speed Limit 75 | Const. ☐ Yes Zone ☒ No | Workers ☐ Yes Present ☒ No | Secondary ☐ Yes Crash ☐ No | Street Desc. |
|---|---|---|---|---|---|---|---|

### INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER

| At ☐ Yes Int. ☒ No | 1 Rdwy. Sys. FM | Hwy. Num. 1161 | 2 Rdwy. Part 1 | Block Num. | 3 Street Prefix | Street Name FM 1161 | 4 Street Suffix |
|---|---|---|---|---|---|---|---|

| Distance from Int. or Ref. Marker 0.1 | ☐ FT ☒ MI | 3 Dir. from Int or Ref. Marker N | Ref. Marker | Speed Limit | Street Desc. | RRX Num. |
|---|---|---|---|---|---|---|

| Unit Num 3 | 5 Unit Desc. 7 | ☐ Parked Vehicle | ☐ Hit and Run | LP State UN | LP Num | | VIN U N K N O W N |
|---|---|---|---|---|---|---|---|

| Veh. Year | 6 Veh Color 99 | Veh. Make UNKNOWN | Veh Model UNKNOWN | 7 Body Style 99 |
|---|---|---|---|---|

| ☐ Responder Struck (Explain in Narrative if checked) | 8 Autonomous Unit UNKNOWN | 9 Autonomous Level Engaged UNKNOWN | ☐ Police, Fire, EMS on Emergen (Explain in Narrative if checked |
|---|---|---|---|

| 10 DL/ID Type | DL/ID State | DL/ID Num. | 11 DL Class | 12 CDL End | 13 DL Rest | DOB (MM/DD/YYYY) |
|---|---|---|---|---|---|---|

Address (Street, City, State, ZIP)

| Person Num. | 14 Pres. Type | 15 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 16 Injury Severity | Age | 17 Ethnicity | 18 Sex | 19 Eject | 20 Restr | 21 Airbag | 22 Helmet | 23 Sol | 24 Alc Spec | Alc Result | 25 Drug Spec | 26 Drug Result | 27 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | Not Applicable - Alcohol and Drug Results are only reporte for Driver/Primary Person for each Unit | | | | |

| ☐ Owner ☐ Lessee | Owner/Lessee Name & Address UNKNOWN , UNKNOWN |
|---|---|

| Proof of Fin. Resp. ☐ Yes ☐ Expired ☐ No ☐ Exempt | 28 Fin Resp Type | Fin. Resp Name | Fin. Resp Num |
|---|---|---|---|

| Fin. Resp. Phone Num. | 29 Vehicle Damage Rating 1 - | 29 Vehicle Damage Rating 2 - | Vehicle Inventoried ☐ Ye ☒ No |
|---|---|---|---|

| Towed By | Towed To |
|---|---|

| Unit Num 4 | 5 Unit Desc. 6 | ☐ Parked Vehicle | ☐ Hit and Run | LP State UN | LP Num UNKNOWN | VIN U N K N O W N |
|---|---|---|---|---|---|---|

| Veh. Year | 6 Veh Color 99 | Veh. Make UNKNOWN | Veh Model UNKNOWN | 7 Body Style 99 |
|---|---|---|---|---|

| ☐ Responder Struck (Explain in Narrative if checked) | 8 Autonomous Unit NO | 9 Autonomous Level Engaged NO AUTOMATION | ☐ Police, Fire, EMS on Emergen (Explain in Narrative if checked |
|---|---|---|---|

| 10 DL/ID Type | DL/ID State | DL/ID Num. | 11 DL Class | 12 CDL End | 13 DL Rest | DOB (MM/DD/YYYY) |
|---|---|---|---|---|---|---|

Address (Street, City, State, ZIP)

| Person Num. | 14 Pres. Type | 15 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 16 Injury Severity | Age | 17 Ethnicity | 18 Sex | 19 Eject | 20 Restr | 21 Airbag | 22 Helmet | 23 Sol | 24 Alc Spec | Alc Result | 25 Drug Spec | 26 Drug Result | 27 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | Not Applicable - Alcohol and Drug Results are only reporte for Driver/Primary Person for each Unit | | | | |

| ☐ Owner ☐ Lessee | Owner/Lessee Name & Address UNKNOWN, UNKNOWN, UNKNOWN, UNKNOWN, UN |
|---|---|

| Proof of Fin. Resp. ☐ Yes ☐ Expired ☒ No ☐ Exempt | 28 Fin Resp Type | Fin. Resp Name | Fin. Resp Num |
|---|---|---|---|

| Fin. Resp. Phone Num. | 29 Vehicle Damage Rating 1 - | 29 Vehicle Damage Rating 2 - | Vehicle Inventoried ☐ Ye ☒ No |
|---|---|---|---|

| Towed | Towed |
|---|---|

**INJURED/KILLED**

| Unit Num. | Prsn Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HRMM) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Unit Num. | Prsn Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |

| Unit Num. | ☐ 10,001+ LBS. | ☐ Transporting Hazardous Material | ☐ 9+ Capacity | CMV Disabling Damage? ☐ Yes ☐ No | 30 Veh. Oper. | 31 Carrier ID Type | Carrier ID Num. | |
|---|---|---|---|---|---|---|---|---|

| Carrier's Corp. Name | Carrier's Primary Addr. | 32 Veh. Type |
|---|---|---|

| 33 Bus Type | ☐ RGVW ☐ GVWR | HazMat Released ☐ Yes ☐ No | 34 HazMat Class Num | HazMat ID Num. | 34 HazMat Class Num. | HazMat ID Num. | 35 Cargo Body Type |
|---|---|---|---|---|---|---|---|

| Unit Num. | ☐ RGVW ☐ GVWR | 36 Trlr. Type | CMV Disabling Damage? ☐ Yes ☐ No | Unit Num. | ☐ RGVW ☐ GVWR | 36 Trlr. Type | CMV Disabling Damage? ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|

| Sequence Of Events | 37 Seq. 1 | 37 Seq. 2 | 37 Seq. 3 | 37 Seq. 4 | Intermodal Shipping Container Permit ☐ Yes ☐ No | Actual Gross Weight | Total Num. Axles |
|---|---|---|---|---|---|---|---|

**CONDITIONS**

| 38 Contributing Factors (Investigator's Opinion) | | | | 39 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # | Contributing | | May Have Contrib | Contributing | May Have Contrib | 40 Weather Cond. | 41 Light Cond. | 42 Entering Roads | 43 Roadway Type | 44 Roadway Alignment | 45 Surface Condition | 46 Traffic Contro |
| 3 | | | 4   23 | | | | | | | | | |

Investigator's Narrative Opinion of What Happened (Attach Additional Sheets if Necessary)

Indicate North

Field Diagram - Not to Scale

| Date Notified (MM/DD/YYYY) | 0 8 / 1 5 / 2 0 2 3 | Time Notified (24HRMM) | 1 6 2 0 | How Notified | DPS HOUSTON |
|---|---|---|---|---|---|

| Date Arrived (MM/DD/YYYY) | 0 8 / 1 5 / 2 0 2 3 | Time Arrived (24HRMM) | 1 6 4 | Report Date (MM/DD/YYYY) | 0 8 / 1 7 / 2 0 2 3 |
|---|---|---|---|---|---|

| Date Roadway Cleared (MM/DD/YYYY) | 0 8 / 1 5 / 2 0 2 3 | Time Roadway Cleared (24HRMM) | 1 6 1 0 | Date Scene Cleared (MM/DD/YYYY) 0 8 / 1 5 / 2 0 2 3 | Time Scene Cleared (24HRMM) | 2 0 0 0 |
|---|---|---|---|---|---|---|

| Investigation Complete | ☒ Yes ☐ No | Investigator Name (Printed) | TAFT, GLEN | ID Num. | 12658 |
|---|---|---|---|---|---|

ORI

Service/

# CERTIFICATE OF TITLE OF A VEHICLE

Exhibit E

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 5V8VC5327GM603938 | 2016 | VANGUARD | DRY VAN | TRL | 23213412632 |

| DATE ISSUED | ODOMETER | COM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 06/07/22 | | | | 03/07/22 USED | ORIGINAL |

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

TRANSLIDE LLC
1517 N DEE RD
PARK RIDGE IL 60068

OWNER(S) NAME AND ADDRESS

TRANSLIDE LLC
1517 N DEE RD
PARK RIDGE IL 60068



FIRST LIENHOLDER NAME AND ADDRESS

SECOND LIENHOLDER NAME AND ADDRESS

## RELEASE OF LIEN

The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

## ASSIGNMENT OF TITLE





I, Alexi Giannoulias, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

U3563498



ALEXI GIANNOULIAS, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer's Name

Dealer No.

Agent's Signature

Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent

Printed Name (same as signature)

---

**DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer's Name

Dealer No.

Agent's Signature

Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent

Printed Name (same as signature)

---

**DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer's Name

Dealer No.

Agent's Signature

Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent

Printed Name (same as signature)

---

**DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer's Name

Dealer No.

Agent's Signature

Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent

Printed Name (same as signature)

---

**DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer's Name

Dealer No.

Agent's Signature

Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent

Printed Name (same as signature)

---

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

VSD 40 25

# CERTIFICATE OF TITLE OF A VEHICLE

Exhibit F

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 5V8VC5327GM603838 | 2016 | VAN GUARD | UNKNOWN | SEMI TLR | 2215789485 |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 08/08/22 | | | | 03/07/22 USED | CORRECTED/DUP |

MAILING ADDRESS

LEGENDS:
MILEAGE NOT REQUIRED

BYLINE BANK ISAOA
300 PARK BLVD STE 105
ITASCA IL 60143-2604

THIS IS A DUPLICATE CERTIFICATE AND MAY
BE SUBJECT TO THE RIGHTS OF A PERSON
UNDER THE ORIGINAL CERTIFICATE

OWNER(S) NAME AND ADDRESS
EGO EXPRESS INC
1517 N DEE RD
PARK RIDGE IL 60068

FIRST LIENHOLDER NAME AND ADDRESS
BYLINE BANK ISAOA
300 PARK BLVD STE 105
ITASCA IL 60143-2604

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

| First Name | | Signature of Authorized Agent | | Date |
| Firm Name | | Signature of Authorized Agent | | Date |

NEW LIEN ASSIGNMENT: The information below must by on an application for title and presented to the Secretary of State.
Secured Party:                    Address:

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING: ODOMETER DISCREPANCY

ODOMETER READING
Signature(s) of Seller(s)

Printed Name(s) of Seller(s)
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s)                Printed Name

DATE OF SALE

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the
records on file with my Office, the person or entity named hereon is the owner of the vehicle
described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF
THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
U0824331

Jesse White
JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

VAN GUARD                    5V8VC5327GM603838

Name of Seller (Owner Registered Owner)        Name of Buyer

Complete Address of Seller        Complete Address of Buyer

City        State        Zip        City        State        Zip

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.



Exhibit G

November 17, 2023

Translide LLC DBA Translide Freight
2439 W. 16ᵗʰ St.
Indianapolis, IN 46222

RE:      CLAIM NUMBER   :   224.673.1
         POLICY NUMBER  :   CW3532551-00
         INSURED        :   TRANSLIDE LLC DBA TRANSLIDE
                            FREIGHT
         DATE OF LOSS   :   08/15/2023

Dear Insured,

As you are aware, The Littleton Group is investigating the above captioned loss on behalf of
your insurance carrier Trisura Speciality Insurance Company. On August 22, 2023, we
received notice of a claim regarding damages to a tractor and trailer. Our records indicate the
loss occurred on or about August 15, 2023. It is our understanding that the driver, Emanus
Victor, was operating a 2021 Freightliner tractor, bearing VIN: 3AKJHHDR8MSMY0195,
and pulling a 2016 Vanguard trailer, bearing VIN: 5V8VC5327GM603938, and while
attempting to avoid another collision, he moved the tractor trailer to the side of the road,
causing both units to run off the road.

During the course of our investigation, we confirmed the involved driver, Emanus Victor, was
not a scheduled driver at the time of loss and further had not been requested to be added to the
policy until after the date of loss. The policy requires all drivers to be scheduled prior to loss
and excludes coverage for undeclared drivers. The investigation of your claim is complete,
and we wish to advise you of the findings.

At this time, Trisura Speciality Insurance Company must respectfully deny the auto physical
damage claim as the driver, Emanus Victor, was an undeclared driver on the date of loss. This
insurance does not apply to any loss involving a vehicle while being driven or operated by or
under the care, custody, or control of any undeclared driver. We refer you to your Auto
Physical Damage insurance policy number CW3532551-00, effective with Trisura Speciality
Insurance Company from August 10, 2023, to August 10, 2024, which states, in part, the
following:

**COMMERCIAL AUTO**
**CW PD CA 00 20 01 22**

**MOTOR CARRIER COVERAGE FORM**

**The Littleton Group, a Davies company**
1250 S. Capital of Texas Highway
Bldg. 1, Suite 460
Austin, TX 78746

www.davies-group.com
Vada.Willingham@us.davies-group.com

**Translide LLC DBA Translide Freight**
November 17, 2023
Page 2

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION IV – PHYSICAL DAMAGE COVERAGE

**A. Coverage**
   **1.** We will pay for "loss" to a covered "auto" or its equipment under:

     **a. Comprehensive Coverage**
      From any cause except:
      **(1)** The covered "auto's" collision with another object; or
      **(2)** The covered "auto's" overturn.

     **b. Collision Coverage**
      Caused by:
      **(1)** The covered "auto's" collision with another object; or
      **(2)** The covered "auto's" overturn.

We refer you to your Driver Schedule, which reads as follows:

**2.**    **DRIVER SCHEDULE – Only the following individuals are covered operators under this policy.**

| Driver Name(s) | See below – only scheduled drivers are covered |
|---|---|
| Reporting | N/A - Only scheduled drivers are covered |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| HERODE FLEURANT | 1985-04-06 | 9370578053 (IN) | None | Y |

**Translide LLC DBA Translide Freight**
November 17, 2023
Page 3

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| WILSON VIDAL | 1975-05-11 | 156723419 (NY) | None | Y |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| WESLER HERVE | 1991-01-22 | 5330320243 (IN) | None | Y |

| Operator Name | DOB | License Number | Hire Date | Covered (Y/N) |
|---|---|---|---|---|
| ANNDEL ALISMA | 1979-12-01 | A425000794520 (FL) | None | Y |

The following exclusion is added to the policy: This insurance does not apply to any loss involving a **covered vehicle** while being driven or operated by or under the care, custody or control of any driver excluded above (as indicated with a "N" for "Not Covered").

Additionally, we refer you to your Undeclared Driver Exclusion, which reads as follows:

## UNDECLARED DRIVER EXCLUSION

This endorsement modifies insurance provided under the following:

CW PD CA 00 20          Motor Carrier Coverage Form – APD

1.  The following definitions apply to this endorsement:

    **a. Undeclared driver** means any driver not listed on the Driver Schedule.

2.  The following condition is added to the policy:

    It is a condition of the policy that you declare all drivers to the company at or before the inception date of the policy or immediately upon hire.

**Translide LLC DBA Translide Freight**
November 17, 2023
Page 4

> Failure to immediately declare the driver will result in the denial of coverage for a loss to a covered vehicle which they are driving or operating or is under their care, custody or control.

3. The following exclusion is added to the policy:

> This insurance does not apply to any loss involving a covered vehicle while being driven or operated by or under the care, custody or control of any undeclared driver.

All other policy terms and conditions remain unchanged.

Therefore, based on the investigation and policy wording as cited above, there is no coverage for the loss. Trisura Speciality Insurance Company regret to advise that in this instance, they will be unable to indemnify you or any other party for this claim.

Trisura Speciality Insurance Company do not intend to waive any of their rights or defenses which they have now or may discover in the future under the above numbered policy. All rights, defenses and privileges afforded Trisura Speciality Insurance Company under the policy are hereby expressly reserved on their behalf.

If you believe this claim has been wrongfully denied you may communicate with:

**TEXAS - DEPARTMENT OF INSURANCE**
333 Guadalupe Street
Austin Texas 78701
United States
Phone: 512-463-6164
Web: http://www.tdi.state.tx.us

If you know of any additional facts or have any additional information which you would like Trisura Speciality Insurance Company to consider in regard to this claim, please notify us immediately so it may receive the attention it deserves. Thank you for the opportunity to be of service.

Very truly yours,

THE LITTLETON GROUP, A DAVIES COMPANY

*William A. Blakemore*

Bill Blakemore
Commercial Transportation Adjuster
Bill.blakemore@us.davies-group.com

**Translide LLC DBA Translide Freight**
November 17, 2023
Page 5

(210) 468-1799

cc:    Wilson Insurance and Investment Group
2300 Valley View Ln #626
Irving, TX 75062

claims@coverwhale.com